**CANAL INSURANCE COMPANY,**
**Plaintiff–Appellant,**

v.

**FIRST GENERAL INSURANCE COMPANY, Defendant–Appellee.**

No. 89–4050.

United States Court of Appeals,
Fifth Circuit.

Dec. 6, 1989.

Rehearing Denied Jan. 5, 1990.

---

Thomas A. Wicker, Holland, Ray & Upchurch, Tupelo, Miss., for plaintiff-appellant.

Julie E. Chaffin, Thomas, Price, Alston, Jones & Davis, Thomas W. Tardy, III, Jackson, Miss., for defendant-appellee.

Before CLARK, Chief Judge, GEE and SMITH, Circuit Judges.

CLARK, Chief Judge:

Plaintiff Canal Insurance Company (Canal) appeals from a declaratory judgment in favor of defendant First General Insurance Company (First General). Canal sought a declaration that First General's policy provided coverage for a tractor-trailer involved in a highway accident while its own policy did not. After a bench trial the district court ruled that the policy written by First General provided no coverage and dismissed the action on the merits. Because we conclude that First General's policy provides coverage and that Canal's does not, we vacate the judgment of the district court and remand the cause with directions.

## I

This is a dispute over whether a First General automobile liability policy or a Canal policy of the same type, or both, cover an accident between two tractor-trailer rigs which occurred near Meridian, Mississippi. First General's insured, Thomas English Trucking, Inc. (English), owned the tractor that was part of the subject rig. However, at the time of the accident Canal's insured, Custom Freight, Inc. (Custom), had leased the tractor and was using it to pull its own trailer. Reginald Brown, whom the district court found to be an employee of Custom, was driving the rig. His chauffer's license was suspended at the time of the accident. Brown and the driver and a passenger in the other rig were killed.

First General issued an automobile policy to English which was in effect at the time of the accident. In that policy First General agreed to insure English against liability for bodily injury or property damage arising out of the use of an "owned automobile" by English, its named insured, or by any other insured under the policy. The Definitions section of the policy defined, in pertinent part, "owned automobile" as "an automobile which is owned by the named insured and described in the declarations [Schedule of Vehicles]." "Persons insured" included the named insured and anyone using an owned automobile with English's permission. No distinctions were made among types of permissive users, such as between lessees and employees of English. The "PERSONS INSURED" section also contained the following "like insurance" clause:

None of the following is an insured:

.     .     .     .     .

iii) any person or organization other than the named insured, with respect to:

1) a motor vehicle while used with any trailer owned or hired by such person and not covered by like insurance in the company....

The policy's declarations included the Schedule of Vehicles referenced by the "owned automobile" definition. The Schedule included eight specifically described tractors and trailers and contained two entries, numbers 9 and 10, for "[a]ny one non-owned undescribed semi-trailer but only while attached to an insured power unit [tractor]." The Schedule set out a premium for each of the ten entries and showed English was charged the same premium for each of the latter two entries as it was for each specifically described vehicle.

Several aspects of the application process for the First General policy bear mention. English applied for the policy through the Crawford Insurance Agency. The application was prepared by a Crawford employee and signed by English. In response to a question inquiring whether the equipment to be insured was "loaned or rented to others," English responded "no." The district court found to be a forgery a letter written on Crawford Agency letterhead requesting that Custom be added to the First General policy as a named insured. First General's issuing agent, Interstate Truck Underwriters, never received such a letter.

A policy written by Canal and issued to Custom was also in effect at the time of the accident. The policy covered only specifically described tractors and any "unnamed trailer" while attached to one of those tractors. The Canal policy did not list the tractor or trailer involved in the accident. Thus the parties do not dispute that the Canal policy did not provide coverage for the accident in the conventional sense. However, the Canal policy contained an endorsement required by the Interstate Commerce Commission which provided that Canal would pay any judgments in favor of members of the public rendered against Custom, regardless whether the vehicles involved were covered by the policy. Custom is required under the ICC endorsement to reimburse Canal for any payment made that Canal would not have been obligated to make under the provisions of the policy except for the terms of the endorsement.

After the accident, actions were commenced against Custom on behalf of the estates of the other driver, the guest passenger and the owner of the other tractor-trailer rig. Canal determined that its policy did not afford coverage but that it had a responsibility to pay third-party judgments under the ICC endorsement. Canal requested First General to assume coverage and provide Custom a defense. When First General refused, Canal defended Custom under a reservation of right. Canal either paid the judgments or settled the claims against Custom, but also initiated the instant action for a declaratory judgment against First General.

The District Court found that both the Canal and First General policies were in effect when the accident occurred. The court found that Brown was an employee of Custom. The court concluded the like-insurance clause in the First General policy applied. Further, the two non-specific entries in the First General policy's Schedule of Vehicles providing coverage for undescribed, unowned trailers while attached to described tractors were held not to preclude operation of the like-insurance clause against Custom. The court reasoned that (1) First General did not know that the described tractors would be leased to Custom; therefore First General could not have intended the entries to apply to trailers owned by lessees; and (2) the entries served "alternative purposes" that precluded construing them as providing like insurance. Specifically, the court reasoned that the entries covered nonowned, undescribed trailers for physical damage from occurrences other than collisions. Such occurrences would not have been covered absent the two entries. The court therefore denied Canal's request for a declaratory judgment that First General provided coverage and dismissed the action.

## II

Canal contends that the policy terms unambiguously provide coverage to Custom

under the circumstances of the accident. Thus, the district court erred by inquiring whether First General "intended" to cover Custom. Even if the combined operation of the like-insurance clause and the two entries on the Schedule of Vehicles for one undescribed, non-owned vehicle was ambiguous as to permissive users such as Custom, the court erred in concluding there was no coverage because its underlying findings of fact were clearly erroneous; to wit, that First General did not intend to provide coverage to Custom because it did not "know" about English's lease to Custom; and that the two entries served the "alternative purpose" of providing physical damage coverage for occurrences other than collision.

Canal also contends that its policy written for Custom does not provide insurance for the accident. None of the vehicles involved was specifically covered by the policy. Canal defended Custom under reservation of right and paid the state court judgments solely because the ICC endorsement for the protection of the public obligated Canal to pay them. Under the same endorsement Custom must reimburse Canal because coverage was not afforded under the terms of the policy other than through the ICC endorsement. Thus, Canal argues, it "stands in the shoes" of Custom entitling it to direct reimbursement from First General, whose policy covers the accident.

### III

#### A. The First General Policy

■ As a threshold matter, we note that construction of insurance policies is a matter of state law. However, neither party raised or briefed the issue of which state's law governs this dispute. We assume, as do the parties, that Mississippi law applies. *See Transport Indem. Co. v. Paxton Nat'l Ins. Co.*, 657 F.2d 657, 660 n. 5 (5th Cir. 1981).

■ The first issue we must resolve is whether Custom's status as an insured under the First General policy was abrogated by operation of the policy's like-insurance clause. The clause strips away insured status from a permissive user who uses a listed tractor to pull the permissive user's own trailer that is not covered by like insurance issued by First General. Brown, Custom's employee, was pulling a Custom-owned trailer with a listed tractor at the time of the accident. The like-insurance clause therefore applies.

■ The issue becomes whether Custom's trailer was covered by like insurance. We find that it was. Entries 9 and 10 on the Schedule of Vehicles each provide coverage for one "non-owned undescribed semi-trailer" while attached to a listed tractor. This use of the term "non-owned" occurs in a list of English-owned vehicles and in a policy in which English is the named insured. The term in this context can only refer to ownership by English, not by an omnibus insured. Because the trailer was attached to an insured tractor, was not owned by English and was not described in the Schedule of Vehicles, it squarely fits within the description of entries 9 and 10. We note also that the policy called for separate premiums for each of these entries equal to the premium for specifically described trailers. Under the very terms of the policy, the trailer was covered by like insurance in the company.

The cases cited by First General opposing this conclusion involve either the validity of like-insurance clauses, *Travelers Insurance Co. v. United States Fire Insurance Co.*, 570 F.2d 515, 516 (5th Cir.1978), or the construction of such clauses in light of other types of clauses not relevant here. *Canal Insurance Co. v. State Automobile Association*, 433 F.2d 373, 375–76 (5th Cir. 1970).

First General argues strenuously that the policy does not cover Custom because it never "intended" to cover Custom. It claims that entries 9 and 10 were added to afford English coverage when English operated listed tractors while pulling undescribed and unowned trailers. Because the policy terms unambiguously provide for coverage for Custom under the circumstances, we need not look behind the policy language for the parties' intent. We note, nevertheless, that entries 9 and 10 may

well provide such coverage to English. However, this hypothetical result does not vitiate the conclusion that the same entries cover Custom's use of the specific tractor-trailer combination here.

Moreover, the policy terms are inconsistent with First General's assertion that it did not intend to cover Custom. "Insureds" include permissive users; Custom was a permissive user. The policy does not exclude lessees from coverage nor does it relegate them to a less preferred status among types of permissive users. In fact, the policy insures *only* lessees and borrowers, and their employees, for losses occurring during loading and unloading of a covered vehicle. Policy § A, III(c). That First General was unaware English leased the vehicles to Custom becomes irrelevant as between First General and Custom in light of the clear policy language.

■ First General also contends that the policy is void for fraud because, (1) it never received from Crawford the motor vehicle report on Brown disclosing that his license was suspended; and (2) English misrepresented in the policy application that the equipment was not rented to others. The district court refused to consider these fraud arguments because First General stipulated in the pretrial order that its policy was in full force and effect at the time of the accident and, further, because it did not specifically plead fraud as a defense although "these incidents were easily determinable from the facts."

We agree. Pretrial orders control the course of actions and "shall be modified only to prevent manifest injustice." Fed.R. Civ.P. 16(e). This court consistently enforces this rule. "If a claim is omitted from the order, it is waived." *Flannery v. Carroll*, 676 F.2d 126, 129 (5th Cir.1982). "District courts are encouraged to construe pretrial orders narrowly without fear of reversal." *Id.* The district court found that the relevant facts were available to First General at the time of the pretrial conference. We agree. Before the pretrial conference First General failed to investigate routinely for easily discernible facts underlying issues basic to a fraud claim. It cannot thereafter claim "manifest injustice" to modify the order in light of later-discovered but previously discoverable favorable evidence.

In sum, entries 9 and 10 of the Schedule of Vehicles provide like insurance so that Custom remains an omnibus insured under the policy. First General's "intent" argument lacks merit and the fraud claim is foreclosed. Therefore, the First General policy provides coverage to Custom under the circumstances of this occurrence.

### B. The Canal Policy

■ The Canal policy issued to Custom does not provide coverage for this occurrence in the traditional sense. The main body of the policy insures Custom for liability incurred by any insured while using specifically listed vehicles, all tractors, alone or coupled with "unnamed" trailers. The Custom-owned trailer involved in the accident was not specifically described in the policy, nor was it attached to a listed tractor. Thus the insuring language of the policy does not provide coverage for the accident.

■ The policy contains, however, an endorsement entitled "ENDORSEMENT FOR MOTOR CARRIER POLICIES OF INSURANCE FOR PUBLIC LIABILITY UNDER SECTIONS 29 AND 30 OF THE MOTOR CARRIER ACT OF 1980" (ICC endorsement). The endorsement (MCS–90) provides:

[Canal] agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation ... of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy.... Such insurance as is afforded for public liability does not apply to injury to or death of the insured's employees ... or property transported by the insured.... [N]o condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement

thereon, or violation thereof, shall relieve [Canal] from liability or from the payment of any judgment, within the limits of liability herein described.... *However, all terms, conditions, and limitations in the policy to which this endorsement is attached shall remain in full force and effect as binding between the insured and the company.* The insured agrees to reimburse the company for any payment made by the company on account of any accident ... and for any payment that the company would not have been obligated to make under the provisions of this policy except for the agreement contained in this endorsement. (Emphasis added).

Canal contends that this ICC endorsement does not constitute "insurance"; it neither increases nor extends coverage to Custom beyond that expressed in the policy itself. The endorsement merely obligates Canal to pay third-party judgments rendered against Custom regardless whether the vehicles involved were covered under the policy. Canal then is entitled to reimbursement from Custom for judgments paid that Canal would not have been required to pay under the policy but for the ICC endorsement. Because the endorsement is not "insurance," Canal argues, it provides no coverage, and First General is Custom's sole insurer with respect to Brown's accident.

First General responds that the endorsement by its own terms constitutes insurance. Moreover, it is primary insurance, albeit not as a matter of law. Assuming, but not conceding, that it provides primary insurance as well, First General asserts that the "other insurance" clauses of the two policies are identical and compatible, each limiting liability to its proportion of the total available coverage. Finally, liability must be further apportioned between the tractor and the trailer in compliance with the rule of *Blue Bird Body Co., Inc. v. Ryder Truck Rental, Inc.*, 583 F.2d 717 (5th Cir.1978).

The issue to be decided at this juncture is whether an insurance policy, such as Canal's, provides "primary coverage" for purposes of determining liability as between two insurers where: (1) the policy itself covers only specifically listed vehicles; (2) the policy contains ICC-mandated endorsement BMC 90 requiring the insurer to pay third-party judgments obtained against its insured for occurrences involving *non-listed* vehicles, the insurer having the right to seek reimbursement from the insured in this circumstance; and (3) where another policy, not containing a similar endorsement, provides primary coverage. This precise question has not been answered in the Fifth, or any other, Circuit. However, our review of congressional intent, applicable ICC regulations, and our decisions in other contexts involving ICC endorsement BMC 90 lead us to conclude that such a policy does not provide "primary coverage" in this situation.

1. Statutes and regulations

The operation and effect of ICC-mandated endorsements are a matter of federal law. *Carter v. Vangilder*, 803 F.2d 189, 191 (5th Cir.1986). Congress has mandated that the ICC issue operating permits to motor carriers only if the motor carrier has filed with the ICC an adequate "bond, insurance policy, or other type of security ... in an amount not less than ... the Secretary of Transportation prescribes...." 49 U.S.C. § 10927(a)(1). In addition, the ICC is empowered to promulgate regulations to insure that motor carriers operating tractors or trailers as lessees under leasing arrangements, such as Custom, assume total responsibility for the operation of their rented vehicles, including obtaining adequate insurance. *Id.* § 11107.

Pursuant to section 11107, the ICC requires that all equipment leases entered into by "authorized carrier lessees" contain provisions stating that the lessee "shall have exclusive possession, control, and use of the equipment for the duration of the lease," and that the lessee "assume complete responsibility for the operation of the equipment for the duration of the lease." 49 C.F.R. § 1057.12(c) (1988). Further, a motor carrier may not engage in interstate commerce unless it has filed with the ICC a surety bond or certificate of sufficient in-

surance "conditioned to pay *any* final judgment recovered against such motor carrier for bodily injuries to or the death of any person resulting from the negligent operation, maintenance or use of motor vehicles subject" to ICC regulation. *Id.* § 1043.1(a)(1) (emphasis added).

To assure compliance with the latter regulation and the underlying congressional mandate expressed in 49 U.S.C. § 10927, the ICC has prescribed a form endorsement, BMC 90 (Rev.1982), 49 C.F.R. § 1003.1; *see id.* § 1003.3, successor and identical in relevant part to the endorsement in Canal's policy, MCS 90 (Rev.1981).

### 2. Fifth Circuit cases

The decisions of this court indicate that the policy embodied in the statutes and regulations was to assure that injured members of the public would be able to obtain judgments collectible against negligent authorized carriers. Our cases have held, however, that this policy has no application to coverage disputes among insurers.

In *Carolina Casualty Insurance Co. v. Underwriters Insurance Co.*, 569 F.2d 304 (5th Cir.1978), we held that the ICC endorsement did not render the attached policy primary insurance as a matter of law as against another carrier's policy not containing the endorsement. *Id.* at 313. We stated:

> The purpose of [section 10927] and regulations is to assure *to members of the public and shippers* that a certified carrier has independent financial responsibility, within the dollar limits prescribed, to pay for losses created by its carrier operations.

*Id.* at 312 (emphasis added). The endorsement accomplishes this purpose by reading out of the policy excess- and other-insurance clauses as against injured members of the public. *Id.* However, this extinguishment serves no purpose as against the insured or among insurers. "Indeed, the last sentence of the endorsement prescribes that as between the insurer and the insured all terms of the policy are to remain in effect." *Id.* (see *supra* italicized language of endorsement). *"ICC policy factors are frequently determinative where protection of a member of the public or a shipper is at stake, but those factors cannot be invoked by another insurance company which has contracted to insure a specific risk and which needs no equivalent protection."* *Id.* at 313 (emphasis added); *see also Empire Indemnity Insurance Co. v. Carolina Casualty Insurance Co.*, 838 F.2d 1428, 1433 (5th Cir.1988) (policy not specifically covering tractor-trailer involved in accident but containing endorsement did not create coverage); *Carter v. Vangilder*, 803 F.2d 189 (5th Cir.1986).

Where, as here, a policy does not provide coverage for nonlisted vehicles except to third-party members of the public through operation of ICC form endorsement BMC 90, the policy provides no coverage for purposes of disputes among insurers over ultimate liability. Therefore, as against First General, Canal's policy provides no coverage. Because we hold that First General provides coverage and Canal does not, we do not reach First General's contention that liability should be further apportioned according to *Blue Bird Body Co., supra.*

### C. Cost of Defense

Canal also asks us to declare that First General is liable for its costs in defending Custom in state court. Canal claims that it defended under reservation of right, providing the defense as a matter of good faith, to control the litigation and possibly to mitigate damages that may have been awarded in the state court action. First General responds that Canal had no duty to defend under the ICC endorsement and therefore was acting as a volunteer. As such, First General asserts, Canal is not entitled to reimbursement.

■ The Mississippi Supreme Court has not described the circumstances under which it would find that an insurer was acting as a "volunteer" and therefore not entitled to reimbursement, but we confidently can predict what the court would hold in this case. The terms of Canal's policy, exclusive of the ICC endorsement, obligate it to defend insureds for claims of

liability arising from occurrences involving covered vehicles even if the claims are "groundless, false or fraudulent." The ICC endorsement requires Canal to pay any third-party judgments obtained against Canal, but does not in itself require Canal to defend an insured. Because the accident did not involve a listed vehicle, Canal had no duty to defend Custom. However, Canal reasonably could have feared that a court might have construed the ICC endorsement in conjunction with the duty-to-defend clause in the text of the policy as requiring it to provide Custom a defense. Moreover, the ICC endorsement created in Canal a manifest interest in controlling the litigation to minimize the size of any judgments once First General denied coverage and refused to defend. Canal can hardly be characterized as a volunteer.

First General, on the other hand, wrongfully refused to assume Custom's defense when requested by Canal. According to its policy, First General agreed to provide a defense when claims were made against an insured for occurrences happening during operation of a vehicle covered under the policy. Custom was an omnibus insured operating covered vehicles. Therefore, First General had a duty to defend Custom. Because Canal was not a volunteer and First General had a duty to defend Custom, First General must reimburse Canal for its costs in defending Custom.

## IV

First General's policy provided coverage to Custom; Canal's did not. Further, First General wrongfully refused to defend Custom and Canal did not "volunteer" by providing Custom a defense. First General must reimburse Canal for, and in the amount of, judgments and settlements paid by Canal on behalf of Custom in the related state court actions, Canal's cost of defending Custom, and the court costs in the district court. In addition, First General will pay costs in this court. The record is unclear as to the actual amounts. On remand, the district court is to calculate these amounts and enter judgment accordingly.

The judgment of the district court is VACATED and the cause is REMANDED WITH DIRECTIONS.