NATIONAL AMERICAN INSURANCE COMPANY, Plaintiff,

v.

CENTRAL STATES CARRIERS, INC.; Industrial Indemnity Company, and Wanco Transportation, Defendants.

Civ. No. L89–79.

United States District Court, N.D. Indiana, Hammond Division.

Feb. 14, 1992.

Michael E. Simmons, Indianapolis, Ind., R. Patrick Gilmore, Chandler, Okl., for plaintiff.

Dwight E. Smith, pro se.

James R. Lakin, Rensselaer, Ind., Jeffrey A. Doty, Indianapolis, Ind., Jeffrey A. Cooke, William M. Bache, Lafayette, Ind., for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This matter is before the court following a bench trial held on October 28, 1991 in Lafayette, Indiana. Post-trial briefs have been submitted by the plaintiff and the defendants, and the court is now fully advised of the issues and controversies of this case. This court has jurisdiction pursuant to 28 U.S.C. § 1332. The substantive law of Indiana applies.

The court finds the facts of this case to be as follows. On June 5, 1988, near Lafayette, Indiana, a semi tractor driven by Dwight Smith collided with an automobile driven by Rob Travis.[1] Mr. Travis was killed. Mr. Smith, who was driving under the influence of alcohol, is now incarcerated.

Tresia Travis, individually and as administratrix of the estate of Rob Travis, filed suit in Tippecanoe Circuit Court against Dwight Smith, Central States Carriers, ("Central States") and Wanco Transportation, ("Wanco"). That lawsuit was settled before trial with the payment of $250,000.00 plus attorney fees by Central States' insurer, National American Insurance Company, ("National American").

Dwight Smith was at least nominally an employee of Central States. He was scheduled to drive to Lyons, Illinois on the morning of June 6, 1988 in order to transport a load for a customer of Central States. Because he was to leave early in the morning, he took the tractor from its storage yard in Wheatfield, Indiana on the evening of June 5. Apparently on his way home, he drove the tractor to Lafayette and spent the evening drinking heavily at Lafayette taverns. He had not informed anyone that he was taking the tractor. However, there were no company procedures or personnel to prevent his taking the tractor.

The tractor itself was the subject of a lease between its owner, Sculley Trucking, and Wanco Transportation. The lease became effective June 1, 1988 and provided, among other things, that Wanco would have exclusive control and complete responsibility over the leased equipment, and that Wanco would secure liability insurance. Wanco did obtain a policy of insurance from Industrial Indemnity, Inc.

An apportioned license plate for the truck, registered on March 25, 1988, identified Sculley Trucking as the lessor and Central States as the lessee. Wanco did not take actual physical possession of the truck pursuant to the lease, nor did Wanco ever designate freight to be hauled under the lease. Had the load been successfully hauled, Wanco, Central States, and Sculley Trucking would each have received a percentage of the revenue.

Roger Sculley, who was Wanco's agent for the Indiana area, authorized the use of this Sculley Trucking-owned, Wanco-leased tractor by Central States. Roger Sculley was also the president of Sculley Trucking, which was in bankruptcy proceedings at the time, and also had responsibilities to Central States, his son's company. Sculley Trucking had owned nine trucks when it began doing business; some were leased to Central States; one was sold to Wanco; the truck driven by Dwight Smith was leased to Wanco.

The Interstate Commerce Commission, ("ICC"), requires trucks to display identify-

---

1. The court is aware that "tractor" is the more technically correct term for the vehicle in question. As "truck" is the more generally used and understood term, however, the two words are used interchangeably here.

ing placards; Dwight Smith's truck bore Central States placards because the Wanco placards which Roger Sculley had ordered pursuant to the new lease had not yet arrived.

The plaintiff, National American Insurance, has paid Tresia Travis's claim against Central States. It argues, however, that its reasons for doing so show that it did not "volunteer" to pay this claim, and that it was not liable for the claim in the first place.

The parties have commenced all of their arguments with a facial examination of National American's policy on Central States; the court will do so as well. There is evidently no dispute that the National American policy covers "specifically described autos," and that the tractor in question was not a specifically described auto. So far, National American provides no coverage. In compliance with ICC regulations, however, the policy included an MCS–90 endorsement, as follows:

In consideration of the premiums stated in the policy to which this endorsement is attached, the insurer (the Company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability, resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insurer or elsewhere.

However, all terms, conditions and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

 Following the holdings in *Travelers Insurance Co. v. Transport Insurance Co.*, 787 F.2d 1133 (7th Cir.1986) and even *Canal Insurance Co. v. First General Insurance Co.*, 889 F.2d 604 (5th Cir.1989), this court is convinced that the ICC-mandated endorsement does not constitute insurance coverage *per se*. It is clear that public policy calls for *someone* to pay when a member of the public is harmed by a member of the trucking industry. National American therefore acted reasonably in paying Mrs. Travis's claim.

However, the endorsement calls not only for payment by National American but also for reimbursement by Central States of payment made only pursuant to the endorsement and not under the policy. Now that the public has been protected, the issue of who is ultimately responsible arises, and National American chooses Wanco and Industrial Indemnity.

 Dwight Smith's accident assertedly becomes Wanco's, and therefore Industrial Indemnity's, problem because Wanco was the lessee of the tractor at the time of the collision. A threshold issue for the court, then, is the validity of the Sculley Trucking–Wanco lease. A signed lease agreement has been presented to this court, and there is no evidence that Sculley Trucking and Wanco did not intend to abide by their agreement. The lease contained ICC-required statements that the lessee "shall have exclusive possession, control, and use of the equipment for the duration of the lease," and "shall assume complete responsibility for the operation of the equipment for the duration of the lease." *See* 49 C.F.R. § 1057.12(c)(1). However, the evidence indicates that business operations among Sculley Trucking, Central States, and Wanco were rather relaxed: the trucks were all stored on the same lot, Central States' drivers were sometimes assigned to Wanco trucks, and profits were apportioned among all three companies. Though Wanco did not zealously control its leased tractor—its only act as lessee may have

been when Roger Sculley, as Wanco's agent, lent the tractor to Central States—the evidence does not show that this was anything but a *bona fide* lease which the court does not need to disturb.

Given the court's determination that Wanco, as lessee of the truck, is liable, the next question is whether the truck is covered by Wanco's Industrial Indemnity policy.

The Industrial Indemnity policy covers vehicles which are "hired" or "owned autos." The definition of "hired" includes autos which are leased, hired, rented or borrowed. The tractor Dwight Smith was driving is therefore a "covered auto." The next question is whether Wanco's leased tractor was covered when Central States was using it. The Industrial Indemnity policy provides in pertinent part:

The following are "insureds":

a. You for any covered "auto."

b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

(1) The owner or anyone else from whom you hire or borrow a covered "private passenger type auto."

(2) Your employee or agent if the covered "auto" is a "private passenger type auto" and is owned by that employee or agent or a member of his or her household.

(3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing or parking "autos" unless that business is yours.

(4) Anyone other than your employees, partners, a lessee or borrower or any of their employees, while moving property to or from a covered "auto."

(5) A partner of yours for a covered "private passenger type auto" owned by him or her or a member of his or her household.

None of the above exceptions is applicable here. However, the defendants point to the policy language which specifically addresses the trucking industry:

d. The owner or anyone else from whom you hire or borrow a covered "auto" that is not a "trailer" while the covered "auto":

(1) is being used exclusively in your business as a "trucker"; and

(2) is being used pursuant to operating rights granted to you by a public authority.

"Trucker" is defined as any person or organization engaged in the business of transporting property by "auto" for hire.

■ The defendants argue that paragraph (d) eliminates Central States as an "insured" because the truck was not being used exclusively in Wanco's business. The key language, however, is *from whom you hire*. Wanco hired (leased) this truck from Sculley Trucking, not from Central States, which was the *borrower* here. Sculley Trucking's elimination from "insured" status is irrelevant, as it is not a party to this lawsuit. Central States remains within the definition of "insured" as "anyone else while using with your permission a covered "auto" you own, hire or borrow. . . ."

Since the vehicle in question is a "covered auto" and Central States is an "insured," Industrial Indemnity is liable for claims arising from Rob Travis's death.

The defendants point to an indemnification clause in the Sculley Trucking–Wanco lease which provides that "lessor shall indemnify and hold harmless lessee from and against any and all claims by any persons resulting from the operation of the equipment herein leased. . . ." It is unfortunate for all concerned here that the lessor (Sculley Trucking) no longer exists to indemnify anyone. The clause also does not change Central States' qualification as an insured under Wanco's Industrial Indemnity policy. Similarly, the line of cases cited by the defendants to discuss primary versus secondary insurance coverage does not help this situation, where there is coverage from only one policy and one MCS–90 endorsement.

For all of the reasons discussed above, this court determines that Industrial Indemnity should have paid the $225,000.00 to settle the state tort litigation, which National American paid. Industrial Indemnity, Inc. is therefore ordered to reimburse

National American Insurance Co. in the amount of two hundred twenty-five thousand dollars ($225,000.00). The court also finds that while National American's MCS–90 endorsement gave it good reason to settle the tort litigation, the endorsement was clearly not an insurance policy requiring National American to defend Central States. Industrial Indemnity is therefore also ordered to pay National American the sum of seven thousand nine hundred eighty-one dollars and thirty-five cents ($7,981.35) incurred by National American in defending Central States.

IT IS SO ORDERED.