### OLD REPUBLIC INSURANCE COMPANY, et al.

v.

### CANAL INSURANCE COMPANY.

Civ. No. JFM–93–949.

United States District Court, D. Maryland.

Dec. 14, 1994.

Glenn W. Trimmer, Rollins, Smalkin, Richards & Mackie, Baltimore, MD, for plaintiffs.

Richard H. Lerch, Lerch and Huesman, Towson, MD, for defendant.

## MEMORANDUM

MOTZ, Chief Judge.

Old Republic Insurance Company and Ryder Truck Rental, Inc. have brought this action against Canal Insurance Company, seeking to recover what they allege to have been a $100,000 overpayment made by Old Republic in settling certain underlying motor tort actions. Canal has counterclaimed for $88,600 in attorneys' fees and other expenses that it incurred in providing a defense to Cates Milk Hauling, Inc., the mutual insured of Canal and Old Republic, in the underlying actions. The facts are undisputed, and both sides have moved for summary judgment.

### I.

On March 25, 1991, Ryder leased a truck-tractor to Cates. The truck rental agreement provided Cates with the option as to whether to purchase liability insurance as part of the rental transaction. Although Cates had a motor vehicle liability policy issued to it by Canal, it chose to purchase liability insurance from Ryder as well. That insurance was provided to Ryder by Old Republic.

On April 10, 1990, a Cates employee was involved in an accident while driving the Ryder truck-tractor to which a trailer owned by Cates was attached. The accident was an extremely serious one, and five lawsuits were brought against Cates, its driver and Roosevelt Wright, the driver of the other vehicle. The suits were eventually settled for the total sum of $1,000,000. Old Republic paid $300,000, Canal paid $414,381 and Nationwide Insurance Company—Wright's insurer—paid $285,619.

Old Republic's claim in this action is based upon a contention that it should have contributed only $200,000 to the settlement. As discussed below, the pivotal issue is whether the insurance provided to Cates by Canal was, like Old Republic's, primary or whether it was excess to Old Republic's. The parties agree that if Old Republic's allegation that both policies were primary is correct, the

$100,000 calculation of overpayment is essentially correct.[1]

## II.

Although Canal has not raised the issue, I note as a preliminary matter that there seems to be a substantial question as to whether plaintiffs have standing to bring this action. In opposing Canal's counterclaim, Old Republic emphasizes that this is not a declaratory judgment action but a breach of contract action. That being the case, Old Republic seems to forget the identity of the party with whom it has joined in the institution of this action. Old Republic is seeking to vindicate the contract rights of Cates that it alleges were breached by Canal, but its co-plaintiff is Ryder. The mere fact that Old Republic allegedly paid $100,000 more in settlement of the underlying actions as a result of Canal's alleged failure to abide by its contractual obligations to Cates does not confer any contract rights upon Ryder (or Old Republic itself). Although it certainly did not make the extra payment altruistically, in the eyes of the law, Old Republic may well have been a mere volunteer.

Abstract logic dictates that I decide the standing issue first. However, in light of the facts that (1) the issue has not been briefed by the parties, and (2) I have concluded that Canal should prevail on the merits, I will permit logic to yield to the more practical interest of litigation expense and delay reduction. See generally Civil Justice Reform Act of 1990, 28 U.S.C. §§ 471 et seq.

1. That is so because if the primary/excess issue is resolved in favor of Old Republic, the provision in Old Republic's policy that would then be applicable calls for *pro rata* contribution by policy limits. Old Republic's policy had an aggregate $300,000 limit and Canal's a $750,000 aggregate limit. $300,000 (Old Republic's aggregate limit) is approximately two-sevenths of $1,050,000 (the sum of the two aggregate limits), and two-sevenths of $700,000 (the approximate amount of the combined contributions of Old Republic and Canal to the settlement) is $200,000—$100,000 less than the $300,000 that Old Republic paid.

2. Old Republic's policy also contained an ICC endorsement. Canal therefore advances the secondary argument that if the effect of the endorsement is to nullify any other limitations in the policy, the provision in the Old Republic policy limiting the amount of insurance to that specified

■ Old Republic's argument that Canal's insurance was primary is based upon provisions in what is known as the "ICC endorsement" to the policy. A box was checked on that endorsement to show that the insurance was primary, and other paragraphs of the endorsement made it clear that a trailer (whether or not specifically described in the policy) was a covered vehicle. The endorsement further provided (as it was required by law to do) that "[i]t is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy ... shall relieve the company from liability or from the payment of any final judgment."

Old Republic cites *Empire Fire & Marine Ins. Co. v. Guaranty Mut. Ins. Co.*, 868 F.2d 357 363 (10th Cir.1989) in support of its position. That case does hold that an ICC endorsement voids any other limiting provision in the policy to which it is attached, regardless of the context in which the effect of the endorsement is being considered. However, since the purpose of the ICC endorsement is to protect the public, in cases where the ICC endorsement need not be enforced to provide adequate protection to third parties, it is generally held that provisions in the endorsement cannot be used by one insurance carrier against another in allocating their mutual duties to pay on behalf of a insured. See, e.g., *Canal Ins. Co. v. First General Ins. Co.*, 889 F.2d 604 (5th Cir.1989); *National American Ins. Co. v. Central States Carriers, Inc.*, 785 F.Supp. 793 (N.D.Ind. 1992).[2]

in the rental agreement between Ryder and Cates would be negated. In that event, the amount of coverage afforded by Old Republic would be $5,000,000 (the amount contained in the ICC endorsement) and application of the provision calling for *pro rata* contribution would result in Old Republic being obligated to contribute far more than $200,000. I am sympathetic to Old Republic's response to this argument that clearly as a matter of commercial reality Cates was not purchasing $5,000,000 worth of insurance when it entered into the truck rental agreement with Ryder. On the other hand, what is sauce for the goose is sauce for the gander, and it is Old Republic who is artificially using the language of the ICC endorsement to defeat the reasonable commercial expectation of Cates that it was purchasing primary liability coverage when it chose to buy insurance under the truck rental agreement.

If the ICC endorsement is disregarded, Canal's insurance indisputably was excess, not primary. The truck-tractor rented by Cates was a "temporary substitute automobile" as defined by the policy, and the insurance provided to such vehicles expressly was made "excess over any other valid and collectible insurance available to the insured." Because it had chosen to incur additional expense when entering into the truck rental agreement with Ryder, Cates did have other insurance available to it, i.e. the insurance provided by Old Republic. At least theoretically Cates' premium rates with Canal (its ordinary liability carrier) would be adversely affected if it had not purchased coverage and if its driver had then been involved in an accident. It may be assumed that it was to protect against this fortuity that Cates chose to purchase the Old Republic insurance through Ryder. Thus, to rule in favor of Old Republic would be to deny Cates of the benefit of its bargain.

### III.

■ Old Republic does not contest the amount of attorneys' fees and other expenses that Canal asserts that it incurred in providing a defense to Cates in the underlying actions. Rather Old Republic contends that Canal has no right to claim those fees and expenses in the context of this suit.

Old Republic's argument on this point is persuasive. There is no contractual relationship between Canal and Old Republic. Moreover, although Cates was a mutual insured, Cates itself did not have to pay the fees and expenses in question. Therefore, Canal has no subrogated rights to assert on behalf of Cates. Finally, assuming arguendo that one insured can sue another for defense costs as a result of the latter's bad faith failure to settle, I do not find the issues here to be so clear-cut that it can be said that Old Republic acted in bad faith. As Old Republic suggests, if Canal had wanted to have the defense costs issue resolved judicially, it should have instituted a declaratory judgment action before incurring those costs.

A separate order effecting the rulings made in this memorandum is being herewith.

## ORDER

For the reasons stated in the memorandum entered herein, it is this 14th day of December, 1994,

ORDERED

1. Plaintiffs' motion for summary judgment is granted in part and denied in part;

2. Defendant's motion for summary judgment is granted in part and denied in part;

3. Judgment is entered in favor of defendant as to the claim asserted against it by plaintiffs; and

4. Judgment is entered in favor of plaintiffs against defendant as to the counterclaim asserted by defendant against them.