CANAL INSURANCE COMPANY,
Plaintiff,

v.

DISTRIBUTION SERVICES,
INC., et al., Defendants.

No. CIV.A. 3:01cv00081.

United States District Court,
E.D. Virginia,
Richmond Division.

Dec. 20, 2001.

Thomas Coleman Bunting, Eric Scott Jensen, Nathan Hilles Smith, Mark S. Paullin, Smith & Jensen, PC, Richmond, VA, for Plaintiff.

John Willis Vaughn, Jr., Stephen Matthew Faraci, Jason Christopher Roper, Hirschler, Fleischer, Weinberg, Cox & Allen, Richmond, VA, Anthony E. Flanagan, Davis, Kilbourne, Flanagan & Smith, Raleigh, NC, for Distribution Services, Inc.

Dabney Jefferson Carr, IV, Troutman, Sanders, Mays & Valentine, LLP, Richmond, VA, for Bryan I. Lee and William Thompkins.

Charles Garrison Meyer, III, Ronald Paul Herbert, LeClair, Ryan P.C., Richmond, VA, Richmond, VA, for AIM Leasing Co. and Pacific Employers Ins. Co.

## MEMORANDUM OPINION

DOHNAL, United States Magistrate Judge.

This matter is before the Court by consent of the parties (28 U.S.C. § 636(c)(1)) on separate motions for summary judgment pursuant to Fed.R.Civ.P. 56 by the Defendant William Thompkins ("Thomp-

kins") as against the Plaintiff Canal Insurance Company ("Canal"), and by the Defendants AIM Leasing Company d/b/a/ Nationalease ("AIM") and Pacific Employers Insurance Company ("Pacific") as against Canal as well as on the latter Defendants' separate cross claim as against the Defendants Distribution Services, Inc. ("DSI") and Bryan I. Lee ("Lee"). Further, to the extent not encompassed within the motions and/or responses thereto, dispositive relief is requested on the Plaintiff's Amended Motion for Declaratory Judgment pursuant to Fed.R.Civ.P. 57 in which a declaration of certain rights, duties and obligations of the parties is sought.

In his motion, Thompkins is seeking an order declaring that Canal has a duty to indemnify its insureds DSI and Lee for any amount that may be rendered against them by way of judgment or settlement in favor of Thompkins arising out of a motor vehicle accident involving Thompkins and Lee that occurred on October 22, 1999. (Thompkins' Mem. in Supp. of Mot. for J.) ("Thompkins' Mem."). Canal seeks a determination that its policy insuring DSI does not provide coverage for the alleged accident, or in the alternative, a declaration that Canal is entitled to recover from DSI any amount recovered from Canal by way of judgment or settlement in regard to the alleged accident. (Am. Mot. for Decl. J.) Canal seeks a further determination that it is entitled to reimbursement of any such settlement or final judgment amounts from AIM (as owner of the vehicle involved in the accident) and/or Pacific (as AIM's insurer). *Id.* AIM and Pacific deny that Pacific's policy insuring AIM provides coverage for the vehicle in question, deny that Canal is entitled to reimbursement from either AIM or Pacific for any amount paid in settlement or by final judgment in connection with the alleged accident, and further assert that they are entitled to be indemnified by DSI for and

against any such amounts. (Mem. in Supp. of AIM & Pacific's Mot. for Summ. J.) ("AIM Mem."). For the reasons stated herein, the Defendants' motions as against Canal are GRANTED, subject to the Court's determination regarding DSI's reimbursement obligations to Canal, and the Defendant's AIM and Pacific's motion on their cross claim is DENIED.

## Standard of Review

Summary judgment is only to be granted when there is no genuine dispute as to any issue of material fact when all justifiable inferences are drawn in favor of the non-moving party and the movant is entitled to judgment as a matter of law. *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, unsupported conclusory allegations by the non-moving party are not sufficient to create a genuine dispute of material fact so as to withstand the granting of relief. *Celotex Corp. v. Catrett*, 477 U.S. at 327, 106 S.Ct. 2548 (White, J., concurring). In essence, the Court must decide if the evidence when viewed in the light most favorable to the non-moving party "presents a sufficient disagreement to require submission to the [factfinder] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 251–252, 106 S.Ct. 2505.

## Undisputed Material Facts, Justifiable Inferences, and Contractual Applications

The Court deems the following to be the relevant undisputed facts, permissible inferences, and contractual applications on which the resolution of the pending motions must be based.

1. On October 22, 1999, Thompkins and his minor daughter Shania Thompkins were injured in an accident (the

"Accident") with a tractor-trailer negligently operated by Lee while Lee was working within the scope of his employment for DSI. (AIM Mem. ¶ 5).

2. Shania Thompkins, by her father as next friend, brought an action against DSI related to her alleged injuries and her claims were resolved by settlement by Canal in the total amount of $125,000. (Am. Mot. for Decl. J. ¶ 1; AIM Mem. ¶¶ 5–6).

3. William Thompkins also alleges that he was injured in the Accident and Canal has denied coverage for that additional claim. (AIM Mem. ¶ 5).

4. At the time of the Accident, Canal provided automobile insurance coverage to its insureds DSI and Lee while Lee was acting within the scope of his employment with DSI under a Basic Automobile Liability Policy (the "Canal Policy"). (Thompkins' Mem. ¶¶ 3–4; Am. Mot. for Decl. J. ¶ 2, Ex. A; AIM Mem. ¶ 1, Ex. D).

5. The tractor truck operated by Lee that was involved in the Accident was a 1996 Freightliner (hereafter "Truck"). (Pl.'s Mem. in Opp'n to Mot. for Summ. J.) ("Pl.'s Mem.").[1]

6. The Canal Policy identifies and lists specific vehicles in a schedule of "owned automobiles" for which bodi-ly injury liability coverage is provided. (*See* AIM Mem. Ex. D). The Truck was not listed in such schedule, (Pl.'s Mem.).[2]

7. The Canal Policy also contains a Form MCS–90 endorsement entitled "Endorsement for Motor Carrier Policies of Insurance for Public Liability Under Sections 29 and 30 of the Motor Carrier Act of 1980" (hereafter "MCS–90 endorsement" or "MCS–90"). (Thompkins' Mem. ¶ 5, Ex. B).

8. Under the MCS–90, Canal agreed to pay "any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 *regardless of whether or not each motor vehicle is specifically described in the policy . . . .*" (*Id.* at ¶ 6, Ex. B) (emphasis added).

9. At the time of the Accident, the Truck was being operated as a motor vehicle subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980. (*Id.* at ¶ 9).

10. Pursuant to the MCS–90, "no condition, provision, stipulation, or lim-

---

1. Note that the vehicle identification number ("VIN") of the Truck is listed as either "2FUYDCXB3TA810416" (*see, e.g.,* Mot. for Summ. J.) or "2FUYDCYB3TA810416" (*see, e.g.,* Pl.'s Mem.) in the pleadings, motions, and responses. The discrepancy is likely the result of a typographical error, but in any event neither VIN is listed in the Canal Policy (hereafter discussed).

2. Bodily injury liability coverage under the Canal Policy is only provided for "owned automobiles" and "temporary substitute automobiles." The Truck does not qualify for either definition. "Owned automobiles" must be owned by the named insured and either be listed in the declarations schedule or be a replacement for another vehicle on the list under certain conditions. "Temporary substitute automobiles" are those temporarily replacing an owned automobile due to its servicing, repair, or breakdown. (*See* Mot. for Decl. J. Ex. A). The Truck was being leased and was to be used in "DSI's normal course of business." (*See* Mem. in Opp'n to Defs.' AIM & Pacific's Mot. for Summ. J. on the Cross–Claim) ("DSI's Mem.").

itation contained in the [Canal] policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve [Canal] from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured." (*Id.* at ¶ 7, Ex. B).

11. The MCS–90 designates coverage under the Canal Policy as "primary" for amounts up to $1,000,000 CSL. (*Id.* at ¶ 9, Ex. B).

12. The MCS–90 also requires the insured to "reimburse [Canal] for any payment made by [Canal] on account of any accident, claim, or suit involving a breach of the terms of the policy and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement." (Pl.'s Mem.). The endorsement also clarifies that "all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect *as binding between the insured and [Canal ]*." (AIM Mem. Ex. B.) (emphasis added).

13. At the time of the Accident, the Truck was being leased by DSI under a rental agreement (the "Lease") with AIM. (*See* DSI's Mem.; AIM Mem. Ex. A) (both indicating that the Lease began on or about October 5, 1999).

14. Pursuant to the Lease, DSI agreed to obtain "primary" insurance coverage for the Truck with AIM as an additional named insured and to "indemnify and hold [AIM], its agents, servants, and employees, harmless from any and all claims for injury to persons or damage to property and to any and all expenses incurred in the defense of such claims." (AIM Mem.).[3]

15. At the time of the Accident, Pacific provided insurance coverage to AIM (the "Pacific Policy") which included an endorsement making liability coverage for leased vehicles (such as the Truck) clearly contingent upon two conditions, namely, that the lessee must have furnished AIM with a certificate of insurance making AIM an additional insured on the lessee's policy as required by the leasing agreement, and secondly, that at the time of an accident the insurance required by the leasing agreement must be "collectible." (*Id.* at ¶ 8, Ex. C (entitled "Leasing or Rental Concerns—Contingent Coverage")) (specifically noting that the endorsement changes the policy and that any coverage for leased vehicles will be "excess coverage" over any other collectible insurance).[4]

16. The certificate of insurance that DSI provided to AIM did not name

---

**3.** Counsel for DSI properly conceded at oral argument that the Lease required it to indemnify AIM for any personal injury claims related to the Accident.

**4.** In its Opposition to AIM and Pacific's Motion for Summary Judgment, Canal did not provide any facts in its "Material Facts in Dispute" section to rebut either the assertion

that liability coverage for leased vehicles was clearly contingent upon these two conditions or the assertion that these conditions had not been met. Therefore, to the extent that these assertions contain facts as opposed to legal determinations, or mixed issues of fact applied to law, the Court may assume these facts to be true by operation of Local R. Civ. P. 56.

AIM as an additional insured. (*Id.* at ¶ 9).

## Analysis

### Canal's Duty to Indemnify DSI and Lee

■ Canal asserts that the Canal Policy does not afford coverage for the Accident based on the fact that the Truck was not specifically designated in the policy. However, the clear effect and very purpose of the MCS–90 endorsement is to remove such an impediment to recovery by injured third parties such as Thompkins. Furthermore, the issue of whether Canal is entitled to reimbursement from DSI, AIM or Pacific does not affect or change Canal's clear duty under the endorsement to indemnify its insureds DSI and Lee for claims brought by Thompkins.

As noted in the Undisputed Material Facts, Justifiable Inferences and Contractual Applications (hereafter "Findings"), the MCS–90 endorsement requires Canal to pay "any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 *regardless of whether or not each motor vehicle is specifically described in the policy . . .* " (emphasis added). Furthermore, the MCS–90 makes clear that "no condition, provision, stipulation, or limitation contained in the [Canal] policy, this endorsement, or any other endorsement thereon, or violation thereof, *shall relieve [Canal] from liability or from the payment of any final judgment,* within the limits of liability herein described, irrespective of the financial condition, insolvency, or bankruptcy of the insured." (Findings ¶¶ 9–10) (emphasis added).

■ This language means that Canal cannot in good faith deny coverage on the grounds that the Truck is not listed in the Canal Policy. It also mandates the conclusion that any potential claim it has against DSI for reimbursement under the endorsement (which is a "provision" in the endorsement), or any claim it has against AIM or Pacific for reimbursement (which must arise from its subrogation rights under either the Canal Policy or under the endorsement itself), do not "relieve" it from its obligation to indemnify its insured (DSI) from liability to a third party such as Thompkins in the first instance. As noted by counsel for Thompkins, Canal cites absolutely no authority for its position and this Court has found no authority that would support Canal's denial of coverage under the MCS–90 endorsement *as against an injured member of the public, like Thompkins.* In fact, the case law is unanimously against Canal's position as concerns the interests of Thompkins.

■ The MCS–90 endorsement is required by federal law and federal law applies to its operation and effect. *John Deere Ins. Co. v. Nueva,* 229 F.3d 853, 855–56 (9th Cir.2000); *see also Canal Ins. Co. v. First General Ins. Co.,* 889 F.2d 604 (5th Cir.1990), *modified on other grounds,* 901 F.2d 45 (5th Cir.1990). "It is well-established that the primary purpose of the MCS–90 is to assure that injured members of the public are able to obtain judgment from negligent authorized interstate carriers." *John Deere,* 229 F.3d at 857 (citing *Harco Nat. Ins. Co. v. Bobac Trucking Inc.,* 107 F.3d 733, 736 (9th Cir. 1997); *Canal,* 889 F.2d at 611; *Adams v. Royal Indem. Co,* 99 F.3d 964, 968 (10th Cir.1996)) ("By requiring all such described insurance policies to contain this ICC endorsement, the ICC prevents the possibility that, through inadvertence or otherwise, some vehicles may be left off a policy to the detriment of the public."); *Empire Fire and Marine Ins. Co., v. Guaranty National Ins. Co.,* 868 F.2d 357,

362–63 (10th Cir.1989) ("[T]he ICC endorsement that is the subject of this appeal had its origin in the ICC's desire that the public be adequately protected when a licensed carrier uses a leased vehicle to transport goods pursuant to an ICC certificate.").

Federal case precedent concerning the import of the MCS–90 draws a distinction between, on the one hand, claims made by injured members of the public (like Thompkins) as against insureds and their insurers (for indemnity and payment of final judgments), and on the other hand, claims made by insurers against their insureds or other insurers for reimbursement *after* injured members of the public have received the benefit of the coverage. In deciding the first class of claims, the cases have disregarded provisions in the policy which are inconsistent with the indemnity required in the endorsement. *See, e.g., John Deere*, 229 F.3d at 857–858. However, in deciding the second class of claims (as between insurers and their insureds or other insurers after this public protection purpose has been served), consistent case law has considered all terms of all related policies without regard to the MCS–90 endorsement. *See, e.g., Canal*, 889 F.2d at 611.

It appears in the instant case that Canal is taking the same position as the insurer did in the *John Deere* case by mixing the separate sets of analyses and principles and by relying on case authority that concerns a duty to *defend* under the MCS–90 [5] as distinguished from that case law that concerns a duty to *indemnify*. In *John Deere*, the court distinguished its prior decision in *Harco*, which dealt with an insurer suing its insured for *reimbursement*, explaining that the "[a]ppellants in

the instant case are injured members of the public, and thus are precisely the group meant to be protected by the MCS–90." 229 F.3d at 857. The court further explained that its holding in *Harco* (that the MCS–90 did not implicitly create a duty to defend in and of itself) *was not relevant "when considering a duty to indemnify because, as noted, the MCS–90's sole purpose is to create such a duty." Id.* at 857 (emphasis added). Consequently, the court found that the MCS–90 not only required coverage for vehicles not specifically listed in the policy, but also required indemnification for users not otherwise included within the definition of an "insured" under the policy since such coverage was necessary to accomplish the public protection purpose of the MCS–90.

### DSI's Reimbursement Obligations

■ As noted earlier, the issue of whether DSI must reimburse Canal for any settlement or final judgment amounts paid by Canal does not affect or change Canal's duty to indemnify DSI and Lee in the first instance. However, once payment is made, Canal has the right under the MCS–90 to seek reimbursement from DSI for those payments made on account of the Accident that Canal would not have been obligated to make under the provisions of the Canal Policy or otherwise by operation of law *outside of the endorsement.* (Findings ¶ 12). This reimbursement obligation is also consistent with both the language and the purpose of the MCS–90 endorsement. *See Adams*, 99 F.3d at 972 (once the insurer has paid the injured motorist, the insured is required to reimburse the insurer, *so that the public is protected and "ultimate responsibility*

---

**5.** It should be noted that Canal has not asked this Court to rule on whether it owes a duty to defend in this case (whether under the operation of the MCS–90 or otherwise), but it has

cited cases regarding a duty to defend under the endorsement in support of its arguments rejecting any duty of indemnification.

*rests on the truckers, all as mandated by Congress and the ICC"*) (emphasis added).

■ Having determined that the Truck would not have been covered under the Canal Policy absent the endorsement (Findings ¶6 and Note 2), payment amounts subject to the reimbursement obligation include any settlement or final judgment amounts paid to William Thompkins that are related to his personal injury claims arising from the Accident as well as the $125,000 settlement paid by Canal in favor of Shania Thompkins to the extent that the settlement amount related to her personal injury claims that also arose from the Accident.[6] *See T.H.E. Ins. Co. v. Larsen Intermodal Services, Inc.*, 242 F.3d 667 (5th Cir.2001) (reimbursement obligation under MCS–90 includes both final judgments and settlement amounts). However, at the same time, DSI is *not* obligated to reimburse Canal for any other costs, including costs of any kind associated with this declaratory judgment action (whether they were incurred by Canal, Thompkins, or any other party hereto)[7] since they are not costs that are mandated by (or mandated only by) the endorsement itself. See, e.g., *id.* (insurer had duty to defend under *state* insurance law, not by operation of the MCS–90 endorsement, and therefore it could *not* seek reimbursement from the insured under the MCS–90 endorsement).[8]

**6.** It should be clarified that the reimbursement obligation does not arise until payments are actually made. Therefore, to the extent that any settlement is reached, but payment not yet made, no "reimbursement" obligation has yet arisen.

**7.** Besides falling outside of the costs for which reimbursement is required under the endorsement, it would be especially inappropriate to pass along these additional costs to DSI since Canal's denial of coverage as to Thompkins is not supported by legal authority, and it initiated this action.

### Canal's Claims Against AIM and Pacific

As already noted, once the public is protected (*i.e.*, once the injured third party has been paid), the insurer may have a claim against its insured for reimbursement under the MCS–90 endorsement and it may potentially have a claim against other insurers for reimbursement. The Court has already determined that Canal would have a right of reimbursement against DSI, its insured, but Canal has also asked this Court to determine its rights to seek reimbursement directly from AIM and Pacific (in the event, it is supposed, that Canal cannot or does not choose to collect from DSI). At the same time, AIM and Pacific have moved for summary judgment against Canal with respect to such claims as well as against DSI and Lee by way of cross claim.

Canal bases its arguments against AIM and Pacific on the decision of the United States Court of Appeals for the Fifth Circuit in the *Canal* case. 889 F.2d 604. In that case, Canal had already paid the state court judgments in favor of the injured members of the public involved, and thereafter it sought a declaratory judgment against the owner's insurer (like Pacific) with respect to a "direct reimbursement" from that insurer. *Id.* at 608. The court in *Canal*[9] held that once the public parties were protected and the remaining issue

**8.** As noted in Note 5 *supra*, the Court has not been asked to rule, and does not rule, on whether or not Canal owes a duty of defense for the claims involved in this case. Rather, the Court is simply interpreting the MCS–90 reimbursement obligation on the basis of the language used in the endorsement and consistent with federal precedent.

**9.** The court noted that federal law was applicable to the operation and effect of the ICC-mandated endorsement, but that state law would apply to the construction of any insurance policies unaffected by the endorsement. 889 F.2d at 608, 610.

was a dispute among insurers for ultimate liability, a policy which, like the Canal Policy, does not provide coverage for non-listed vehicles except by operation of the ICC endorsement,[10] no longer provides "primary" coverage for purposes of settling the dispute among insurers. *Id.* at 610–611. The court reasoned that this result was supported by the endorsement itself which stated that as between the insurer and the insured, all terms of the policy were to remain in effect. *Id.* at 611. Since Canal was entitled to reimbursement under the endorsement from its insured, and since the owner's insurer (Pacific in this case) *did* provide primary coverage for the accident under the main provisions of *its* policy, Canal could "stand in the shoes" of its insured and proceed directly against the owner's insurer. *Id.* at 608, 611.

The Fifth Circuit *Canal* case is distinguishable from this action for a number of reasons. First, in that case, Canal *did not* deny coverage as to the injured third party or parties involved in the accident.[11] Second, the court in *Canal* determined that the second insurance policy that was implicated actually *did* provide coverage for the accident under its main provisions as op-

posed to the circumstances in this case. Third, by "standing in the shoes" of DSI in this case, Canal is subject to a number of affirmative defenses both with respect to the Lease and the Pacific Policy that could preclude recovery in any event.

■ In the present case, the public protection purpose has yet to be accomplished, and in fact has been frustrated by Canal's denial of its duty to indemnify its insureds as to the claims brought by Thompkins. Furthermore, until payments are made under the MCS–90 endorsement, Canal can have no right of "reimbursement" against either its insured, DSI, or *through* its insured as against AIM or Pacific. Finally, in the event that Canal *does* satisfy its liability under the MCS–90 endorsement, this Court finds that it will *not* then have the right of a "direct reimbursement" from AIM or Pacific because it will then be subject to the same limitations and exclusions as DSI would be with respect to the terms of the Lease and the Pacific Policy.

■ In considering Canal's claim for reimbursement against AIM and Pacific, all terms and conditions of the Pacific Policy remain in effect and are unaffected by its own MCS–90 endorsement.[12] As noted in

10. A previous ICC form endorsement "B.M.C. 90" was used in the case. Although the form contained the same relevant language as the current MCS–90, it apparently did not contain a reference (as a box to be "checked") to whether the policy provided primary or excess coverage. *See Magann Equipment, Inc. v. Buffkin*, 238 Va. 712, 719, 385 S.E.2d 619, 622–23 (1989). The Virginia court in *Magann Equipment* found this distinction important for purposes of apportioning liability among insurers under the MCS–90. However, where a policy provides no insurance except under the federal endorsement and the endorsement itself compels that the policy terms outside the endorsement should remain in effect as between insurers and their insureds, any reference to "primary" coverage in the endorsement has no effect. Moreover, since the operation and effect of the MCS–90 is a matter of

federal law and the relevant federal precedent conflicts with the Virginia authority, this Court must decline to follow the latter.

11. As already noted, Canal had already paid the state court judgments in favor of the injured members of the public before bringing its action for reimbursement.

12. The MCS–90 endorsement in the Pacific Policy requires Pacific to indemnify its insureds for any final judgments brought against them by injured members of the public. The Court does not need to decide and makes no ruling as to whether *Thompkins* could have sued Pacific under Pacific's own MCS–90 to indemnify DSI and Lee. Nevertheless, it is clear that Canal cannot base its claims *for reimbursement* on the endorsement since Canal is not an injured member of the

the Findings, liability coverage for leased vehicles under the Pacific Policy was clearly contingent upon two conditions being fulfilled and Canal has not denied that these conditions were not met. (*See* Findings ¶ 15). Rather, Canal simply argues that the conditions were "exclusionary" and that the Court needed to review other sections of the policy (which Canal provided to this Court) for a complete analysis of the coverage provided.[13]

■ With respect to the enforceability of exclusions in liability insurance policies, Virginia law controls and the case of *Monticello Ins. Co. v. Baecher*, 252 Va. 347, 477 S.E.2d 490 (1996) is therefore instructive. In that case, the insurance policy contained an exclusion known as a "health hazard exclusion" which excluded coverage for claims for which the insured was liable due to its "utilization" of a hazardous substance. The insured landlord was sued on behalf of a child who had ingested lead-based paint. The insurer argued that there was no coverage under the policy because the landlord had "utilized" the lead-based paint. The landlord insured argued that it had not applied the lead-based paint to the walls but had in fact painted over them with other paint and therefore the landlord insured had not "utilized" the paint within the meaning of the exclusion. Furthermore, the insured argued that the exclusion was ambiguous and should be construed against the insurer. The Virginia Supreme Court ruled for the insurer, upholding the exclusion. The court noted that " '[r]easonable policy exclusions not in conflict with statutes will be enforced,' " (citing *Floyd v. Northern Neck Ins. Co.*, 245 Va. 153, 158, 427 S.E.2d 193, 196 (1993)), and " '[a]n insurance policy is a contract, and, as in the case of any other contract, the words used are given their ordinary and customary meaning when they are susceptible of such construction.' " *Id.* (citing *Graphic Arts Mutual Ins. v. C.W. Warthen Co.*, 240 Va. 457, 459, 397 S.E.2d 876, 877 (1990)) (quoting *Hill v. State Farm Mutual Auto. Ins.*, 237 Va. 148, 152, 375 S.E.2d 727, 729 (1989)). Applying these principles and the dictionary definition of "utilized," the court found the exclusion to be applicable and enforceable. *Monticello*, 252 Va. at 350, 477 S.E.2d at 491.

■ Likewise, in the instant case, this Court finds the exclusionary conditions in the Pacific Policy are both applicable and enforceable.[14] DSI did not provide AIM with a certificate of insurance naming AIM as an additional insured on the Canal Policy "as required by the leasing or rental agreement." (Findings ¶¶ 15–16). This one failure is enough to exclude coverage for the Truck under the Pacific Policy where both conditions must be satisfied for coverage to become applicable, but fulfillment of the second condition is also lacking because coverage under the Canal Poli-

---

public, and as between insurers and their insureds, *or among insurers,* all terms of applicable policies remain in effect.

13. Under Local R. Civ. P. 56, it was incumbent on Canal to note in its "Material Facts in Dispute" section any facts that would rebut Pacific's factual assertions regarding these two conditions to coverage. Canal provided none.

14. Canal argues that the Court must review other provisions of the Pacific Policy in order to make a determination as to coverage and that it was incumbent upon AIM or Pacific to provide these provisions. The Court has reviewed the other provisions that have been provided by Canal and nevertheless finds that the endorsement supplied by AIM and Pacific does contain the provisions which are applicable to this case. (AIM Mem. Ex. C). The relevant endorsement specifically notes that it "changes the policy" and that it is specifically applicable to "Leasing or Rental Concerns—Contingent Coverage." (*Id.*).

cy *is* "collectible" under the applicable MCS-90.

 DSI's failure to provide AIM with a certificate of insurance with AIM as a named insured was also a violation of its Lease with AIM.[15] DSI also failed to obtain insurance coverage for the Truck under the Canal Policy which constitutes yet another violation of the Lease. This contractual responsibility is consistent with the federal regulatory scheme under which "ultimate responsibility rests on the truckers, all as mandated by Congress and the ICC." *See Adams*, 99 F.3d at 972. Finally, since Canal "stands in the shoes" of DSI, it is subject to DSI's contractual and/or implied indemnity obligations as to AIM and Pacific which would, in effect, negate and cancel any reimbursement rights it could have had against AIM and/or Pacific.

### Cross Claim/DSI's Indemnity Obligation

Finally, the Court must also consider the motion for summary judgment of AIM and Pacific with respect to their cross claim against DSI and Lee. Under the Lease, DSI agreed to "indemnify and hold [AIM], its agents, servants, and employees, harmless from any and all claims for injury to persons or damage to property *and to any and all expenses incurred in the defense of any such claims.*" *See* Findings ¶ 14 (emphasis added). Since this Court has already determined that neither AIM nor Pacific are liable for any such claims, the motion is rendered moot with the exception of any claim for costs associated with AIM and Pacific's defense in this action. However, any costs associated with the instant action brought by Canal are not implicated under the indemnity since they were not incurred *in defense of the personal injury claims themselves,* but rather in defense of Canal's claims for reimbursement. Accordingly, such costs are also rendered uncollectible from DSI by AIM or Pacific.

### Conclusion

The motions for summary judgment by Thompkins, AIM, and Pacific as against Canal are therefore GRANTED subject to the Court's holding regarding DSI's reimbursement obligations to Canal, and the motion by AIM and Pacific for summary relief as against DSI and Lee on their cross claim is DENIED as moot or otherwise as having an insufficient basis to grant relief.

An appropriate Order shall issue.

It is so Ordered.

---

**15.** The point is relevant to Canal since, as already noted, Canal "stands in the shoes" of DSI with respect to reimbursement.