REAL LEGACY ASSURANCE CO. a/k/a Royal & Sun Alliance Insurance Puerto Rico, Inc., Plaintiff,

v.

SANTORI TRUCKING, INC., et al., Defendants.

Civil No. 05–1394(GAG).

United States District Court, D. Puerto Rico.

June 11, 2008.

Amancio Arias–Guardiola, San Juan, PR, for Plaintiff.

Jose J. Santos–Mimoso, San Juan, PR, for Defendants.

## OPINION AND ORDER

GUSTAVO A. GELPI, District Judge.

Plaintiff Real Legacy Assurance Company d/b/a Royal & Sun Alliance Insurance (Puerto Rico), Inc. ("Royal") filed suit against Santori Trucking, Inc. ("Santori") seeking reimbursement of costs its incurred in responding to a gasoline spill. Royal bases its right to reimbursement on a mandatory endorsement attached to the trucker's insurance policy it issued to Santori. Santori denies that it has an obligation to reimburse Royal. Royal now moves for summary judgment (Docket No. 42) and seeks an order declaring that Royal is entitled to recover from Santori any amount paid to respond to the gasoline spill. Royal further seeks an order awarding it no less than $1,322,134.44, the clean-up and environmental costs Royal paid in responding to the spill. Santori seeks a declaratory judgment that Royal is not entitled to reimbursement (Docket No. 53).

After reviewing the relevant facts and applicable law, the court **GRANTS** Royal's motion for summary judgment (Docket No. 42). The court further **DENIES** Santori's request for summary judgment (Docket No. 53).

## I. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to in-

terrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "An issue is genuine if it may reasonably be resolved in favor of either party at trial, and material if it posses[es] the capacity to sway the outcome of the litigation under the applicable law." *Iverson v. City of Boston*, 452 F.3d 94, 98 (1st Cir.2006) (alteration in original) (citations and internal quotation marks omitted).

## II.  Factual Background

On January 21, 1999, Royal issued insurance policy number CLP2075300884 in favor of Santori. The one-year policy included a coverage limit of $1,000,000.00 per occurrence. It also contained a total pollution exclusion. Santori did not purchase what is commonly referred to as the Pollution Liability–Broadened Coverage Endorsement, which would have provided some pollution-related coverage.

Santori qualifies as a motor carrier and, therefore, must adhere to the rules and regulation of the Motor Carrier Act of 1980, 49 U.S.C. § 13906 ("MCA"). MCA regulations mandate that all entities receiving payment to haul others' property across state lines or transporting hazardous substances have a MCS–90 endorsement attached to any liability policy. *See* 49 C.F.R. § 387.15. The MCS–90 Endorsement states in pertinent part:

> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsi-

bility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. . . . It is understood and agreed that no condition, provision, stipulation or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described irrespective to the financial condition, insolvency or bankruptcy of the insured.  However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company . . . for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

*Id.* (ILLUSTRATION I).  The endorsement defines "public liability" as "liability for bodily injury, property damage, and environmental restoration." *Id.* "Environmental restoration" means:

> Restitution for the loss, damage, or destruction of natural resources arising out of the accidental discharge, dispersal, release or escape into or upon the land, atmosphere, watercourse, or body of water, of any commodity transported by a motor carrier.  This shall include the cost of removal and the cost of necessary measures taken to minimize or mitigate damage to human health, the natural environment, fish, shellfish, and wildlife.

*Id.* The policy Royal issued to Santori contained the required MCS–90 Endorsement.

On July 25, 1999, a Santori truck traveling in Yabucoa, Puerto Rico overturned and spilled approximately 8,000 gallons of gasoline into adjacent land owned by the Conservation Trust of Puerto Rico ("the Conservation Trust"). On August 12, 1999, the Puerto Rico Environmental Quality Board ("EQB")[1] ordered Santori and its owner to take immediate steps to detain, regulate, and remediate the spill and its adverse effects. The EQB's administrative order required Santori to immediately perform environmental studies and submit its results to the EQB's Land Contamination Regulation Program. The EQB also ordered Santori to reimburse the $3,160.00 in costs it incurred. Santori began some cleanup work but stopped due to a dispute with its insurance company. A subsequent EQB order threatened fines because of Santori's noncompliance with the prior order. Royal eventually paid various suppliers and environmental cleanup companies to clean, remove, and remediate the spilled gasoline, to prepare the EQB-ordered studies, and to reforest the spill-affected areas. In total, Royal paid $1,322,132.44 to comply with the EQB order issued against Santori. Santori directly hired some of these suppliers and cleanup companies for whose services Royal paid. Royal sent correspondence to Santori reserving its right to seek reimbursement from Santori of the amounts paid to clean the spill.

The Conservation Trust filed a complaint against Santori, Royal, and others on April 27, 2000. The parties submitted to the court a settlement agreement pursuant to which Royal paid $50,000.00 to the Conservation Trust. The agreement and payment settled all claims brought in the complaint.

Royal requested reimbursement from Santori for $1,000,000.00, the policy's coverage limit, of the settlement and cleanup costs, invoking the MCS–90 endorsement as the basis for its request. Santori has refused to reimburse Royal and claims it is under no obligation to do so.

## III. Discussion

Royal's summary judgment motion seeks a judgment ordering Santori to reimburse Royal for all expenses it incurred pursuant to the MCS–90 endorsement. More specifically, Royal seeks a judgment of not less than $1,322,134.44, which represents the cleanup costs it incurred. Santori denies that it has any obligation to reimburse Royal. Alternatively, Santori argues that if a right to reimbursement does exist, Royal may recover only the $50,000.00 paid to settle the claims filed by the Conservation Trust. The relevant law reveals that Royal's position is sound but with a caveat. The court holds that Royal is entitled to reimbursement from Santori but only in the amount of $1,000,000.00, the policy's per occurrence limit.[2]

### A. Right to Reimbursement

■ In support of its summary judgment motion, Royal contends that the

---

1. At the time of the accident, Law 9 of June 18, 1970, as amended, P.R. Laws Ann. tit 12, §§ 1128–1140a (2004), governed the EQB's operations. Law 416 of September 22, 2004, P.R. Laws Ann. tit. 12, §§ 8002–8002p (2007), now governs the EQB.

2. The court summarily rejects Royal's argument that it is a third-party beneficiary of the purchase agreement signed between Santori's former and current owners. The purchase agreement itself specifically precludes the interpretation Royal suggests. *See* Docket No. 45, Exh. 2, Subsection 6(f) ("The rights, obligations, and prerogatives of any parties under this Contract will NOT ... be interpreted to the effects of giving third parties any rights, prerogatives, remedies or claims under the current Contract."). Subsection 6(f)'s language evidences the parties' lack of intent to extend benefits to those, like Royal, outside the contract.

MCS–90 endorsement works a surety bond and entitles Royal to recover from Santori any payments made pursuant to the endorsement. Santori argues that the endorsement operates as traditional insurance and, therefore, does not entitle Royal to reimbursement. The question of whether a right to reimbursement exists under the MCS–90 endorsement presents a pure question of law appropriate for resolution at the summary judgment stage. The court agrees with Royal's analysis of the legal question presented. Accordingly, the court holds that Royal has the right to seek reimbursement from Santori for any costs incurred pursuant to the MCS–90 endorsement. The MCS–90 endorsement's plain language, the purpose behind the endorsement, and federal case law interpreting the endorsement support the court's holding.

The plain, unambiguous language of the MCS–90 endorsement recognizes the insurer's right of reimbursement. The endorsement states, in pertinent part, "The insured agrees to reimburse the company . . . for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement." 49 C.F.R. § 387.15 (ILLUSTRATION I); *see also See Canal Ins. Co. v. Distribution Servs., Inc.*, 176 F.Supp.2d 559, 565 (E.D.Va.2001) ("[The insured's] reimbursement obligation is . . . consistent with . . . the language . . . of the MCS–90 endorsement."). The endorsement also states, "[A]ll terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the [insurer]." 49 C.F.R. § 387.15 (ILLUSTRATION I). Pursuant to this language, the MCS–90 does not otherwise alter the limits or exclusions of the under-

lying insurance contract. Santori's interpretation of the endorsement would require the court to ignore its unambiguous language and clear mandates. In recognizing Royal's right to reimbursement, the court is merely enforcing the endorsement's explicit terms.

The purpose behind the MCS–90 endorsement further supports the court's conclusion that a right to reimbursement exists. MCS–90 endorsement ensures that a motor carrier has independent financial responsibility to pay for losses sustained by the general public arising out of its operations. The endorsement is designed to protect the public, not the policyholder; the obligation the endorsement creates runs to the public, not to the insured. It seeks to ensure that ultimate responsibility lies with the insured trucking company. *See Carolina Cas. Ins. Co. v. E.C. Trucking*, 396 F.3d 837, 841 (7th Cir.2005); *T.H.E. Ins. Co. v. Larsen· Intermodal Servs., Inc.*, 242 F.3d 667, 672 (5th Cir. 2001); *Adams v. Royal Indem. Co.*, 99 F.3d 964, 968–69 (10th Cir.1996); *Canal Ins. Co. v. First Gen. Ins. Co.*, 889 F.2d 604, 611 (5th Cir.1989); *Ford Motor Co. v. Transp. Indem. Co.*, 795 F.2d 538, 544 (6th Cir.1986); *Travelers Ins. Co. v. Transp. Ins. Co.*, 787 F.2d 1133, 1139 (7th Cir. 1986); *Carolina Cas. Ins. Co. v. Underwriters Ins. Co.*, 569 F.2d 304, 312 (5th Cir.1978). Allowing reimbursement is consistent with and advances the purpose of the endorsement.

Federal jurisprudence interpreting the MCS–90 solidifies the court's holding that Royal has a right to seek reimbursement from Santori. Federal law governs the operation and effect of the MCS–90 endorsement. *See Minter v. Great Am. Ins. Co.*, 423 F.3d 460, 470 (5th Cir.2005); *T.H.E. Ins.*, 242 F.3d at 672; *John Deere Ins. Co. v. Nueva*, 229 F.3d 853, 856 (9th Cir.2000); *Harco Nat'l Ins. Co. v. Bobac Trucking, Inc.*, 107 F.3d 733, 735 (9th Cir.

1997); *First Gen. Ins.*, 889 F.2d at 610; *Ford Motor Co.*, 795 F.2d at 545; *Wellman v. Liberty Mut. Ins. Co.*, 496 F.2d 131, 138–39 (8th Cir.1974); *In re Yale Express Sys., Inc.*, 362 F.2d 111, 114 (2d Cir.1966); *McGirt v. Royal Ins. Co.*, 399 F.Supp.2d 655, 661 (D.Md.2005), *rev'd in part on other grounds*, 207 Fed.Appx. 305 (4th Cir. 2006); *Distribution Servs.*, 176 F.Supp.2d at 564; *Fireman's Fund Ins. Co. v. CNA Ins. Co.*, 177 Vt. 215, 230, 862 A.2d 251, 263 (2004); *Pierre v. Providence Wash. Ins. Co.*, 99 N.Y.2d 222, 231, 754 N.Y.S.2d 179, 784 N.E.2d 52, 57 (2002); *Lynch v. Yob*, 95 Ohio St.3d 441, 445, 768 N.E.2d 1158, 1162 (2002). The available federal authority, which includes a First Circuit case, recognizes that the MCS–90 does not provide insurance coverage per se. Rather, the endorsement creates a suretyship and carries with it a right to reimbursement.[3] *See Canal Ins. Co. v. Carolina Cas. Ins. Co.*, 59 F.3d 281, 283 (1st Cir.1995) (hereinafter *Canal v. Carolina*) ("On reflection, we consider the ICC endorsement to be, in effect, [a] suretyship by the insurance carrier to protect the public—a safety net—but not insurance relieving Canal, or any other insurer. On the contrary, it simply covers the public when other coverage is lacking.");[4] *see also Canal Ins. Co. v. Underwriters at Lloyd's London*, 435 F.3d 431, 442 n. 4 (3d Cir.2006); *Travelers Indem. Co. v. W. Am. Specialized Trans. Co., Inc.*, 409 F.3d 256, 260 (5th Cir.2005); *Canal Ins. Co. v. Distribution Servs., Inc.*, 320 F.3d 488, 490 (4th Cir.2003); *T.H.E. Ins.*, 242 F.3d at 672; *Harco Nat'l*, 107 F.3d at 736; *Ford Motor Co.*, 795 F.2d at 546; *McGirt*, 399 F.Supp.2d at 665–66; *Kline v. Gulf Ins. Co.*, Case No. 1:01–cv–213, 2005 WL 2206458, at *3–4, 2005 U.S. Dist. LEXIS 30809, at *10 (W.D.Mich. Sept. 12, 2005), *aff'd*, 466 F.3d 450 (6th Cir.2006); *Northland Ins. Co. v. N.H. Ins. Co.*, 63 F.Supp.2d 128, 134 (D.N.H.1999).[5]

3. Santori's argument that the MCS–90 operates as a traditional insurance policy relies upon Puerto Rico contract interpretation law and a recent decision by the Puerto Rico Circuit Court of Appeals. *See Indutech Env't Servs. v. P.R. Am. Ins. Co.*, KLAN 0300661, 2003 WL 23528979 (P.R. Cir. Aug. 22, 2003). In *Indutech*, the Puerto Rico appellate court held that the MCS–90 endorsement formed part of the basic insurance policy with the insured, interpreted the endorsement in accordance with state contract interpretation law, construed its' terms against the insurer, and refused to recognize a right of reimbursement. *Id.* at *7–8. In so doing, the *Indutech* court rejected the suretyship principle. The *Indutech* court's and Santori's reliance on Puerto Rico law, however, is misplaced. Both ignore the clear mandate that the meaning and effect of the MCS–90 endorsement is addressed to federal law. Additionally, the *Indutech* opinion does not reveal that the Puerto Rico court considered the voluminous federal case law describing the MCS–90 as a surety and recognizing the right to reimbursement. The *Indutech* decision is, thus, of no precedential value and little persuasive value.

4. Santori attempts to limit the significance of *Canal v. Carolina* by pointing out that the opinion does not put the reader in a position to know whether the endorsement discussed therein was in the nature of an MCS–90 or MCS–82. Other courts, however, have relied upon *Canal v. Carolina* for precisely the proposition Royal advances—that the MCS–90 creates a suretyship. *See, e.g., Minter*, 423 F.3d at 460; *T.H.E. Ins.*, 242 F.3d at 672; *McGirt*, 399 F.Supp.2d at 665. More importantly, one can infer that *Canal v. Carolina* dealt with the MCS–90 for two reasons. First, the MCS–82 is not, in fact, an endorsement at all. The regulation refers to the MCS–90 as an "endorsement;" it refers to the MCS–82 as a "surety bond." 49 C.F.R. § 387.15. Second, it is nonsensical to suggest that the First Circuit would state that it "consider[s]" the MCS–82 "to be, *in effect*, [a] suretyship by the insurance carrier." *Canal v. Carolina*, 59 F.3d at 283 (emphasis added). The MCS–82 is a surety bond on its face. *See* 49 C.F.R. § 387.15 (ILLUSTRATION II).

5. While arguably dicta in many cases, the court finds persuasive the statements made in

Implicit is any surety arrangement is the principal's (insured's) obligation to reimburse the surety (insurer) for the amount it pays. *See McGirt,* 399 F.Supp.2d at 666; *Kline,* 2005 WL 2206458, at *3–4, 2005 U.S. Dist. LEXIS 30809, at *10–11. Accordingly, when the insurance company pays a claim that is not covered by the policy, the insurance company may attempt to recoup from the insured the amount it paid.

As evidenced by the MCS–90's plain language, its purpose, and federal case law interpreting it, the endorsement is essentially a surety bond and does not constitute insurance coverage per se. When an insurance policy contains a pollution exclusion clause, the MCS–90 does not actually give the insured pollution coverage in the traditional insurance sense. The endorsement creates a suretyship by the insurer to protect the public when the underlying insurance policy otherwise provides no coverage to the insured. The endorsement assures the government that the insurer will respond in the event of an environmental incident. It also reserves the insurance carrier's right to seek from the insured reimbursement of environmental restoration payments made to third parties pursuant to the endorsement.

For the reasons discussed above, the court holds that Royal has the right to seek reimbursement from Santori for costs incurred pursuant to the MCS–90 endorsement.

### B. Amount of Reimbursement Due

■ The court now turns to the question of the amount of reimbursement to which Royal is entitled. Santori concedes that, if a right to reimbursement exists, it must reimburse the $50,000.00 Royal paid to settle the Conservation Trust suit.

Conversely, Santori contests its obligation to pay any of the $1,322,132.44 Royal paid to comply with the EQB administrative order. The only question remaining for the court to answer is what portion, if any, of the $1,322,132.44 paid to environmental consultants must Santori reimburse to Royal. The court holds that the MCS–90 endorsement entitles Royal to reimbursement of the $50,000.00 paid to the Conversation Trust and $950,000.00 of the cleanup expenses Royal incurred in complying with the EQB Order, for a total of $1,000,000.00.

In order to obtain reimbursement based on the MCS–90 endorsement, Royal must demonstrate that it made payments *pursuant to* the endorsement. The uncontested facts reveal that the insurance policy excluded coverage for the gasoline spill; the policy's unambiguous pollution exclusion applied to the July 25, 1999 incident. The policy therefore did not obligate Royal to pay the cleanup and remediation costs. Notwithstanding, Royal paid at least $1,322,132.44 in environmental restoration costs. The parties agree that Royal paid the Conservation Trust settlement pursuant to the MCS–90 endorsement. The parties disagree, however, regarding whether Royal acted pursuant to an obligation created by the MCS–90 endorsement when it made payments to comply with the EQB order.

The EQB order imposed a legal liability or obligation upon Santori to conduct environmental restoration activities. The MCS–90 seeks to ensure that carriers have sufficient economic resources to conduct precisely this type of activity. Royal immediately paid for the environmental restoration activities that Santori was legally obligated to conduct. In such circum-

these decisions regarding the meaning and effect of the MCS–90 endorsement. *See Humphrey's Executor v. United States,* 295 U.S. 602, 627, 55 S.Ct. 869, 79 L.Ed. 1611 (1935) (allowing court to follow dicta if "sufficiently persuasive").

stances and in accordance with the public protection purpose behind the endorsement, the court holds that Royal was responsible for the costs under the MCS–90 endorsement. Royal made environmental restoration payments pursuant to the endorsement and is, consequently, entitled to reimbursement of a portion of the money it expended.

The MCS–90 endorsement required Royal to pay only up to the policy limit—$1,000,000.00 per occurrence. *See* 49 C.F.R. § 387.15 (ILLUSTRATION I) (requiring insurer to pay public liability judgments "within the limits of liability [in the policy]"); *Stevens v. Fireman's Fund Ins. Co.*, Case No. 2:01–CV–275, 2002 WL 31951274, at *6–8, 2002 U.S. Dist. LEXIS 28156, at *18–21 (S.D.Ohio Nov. 6, 2002) (holding insurer's potential liability under MCS–90 endorsement constrained by stated policy limit), *aff'd*, 375 F.3d 464 (6th Cir.2004); *Hamm v. Canal Ins. Co.*, 10 F.Supp.2d 539, 545–48 (M.D.N.C.1998) (concluding policy's per accident limit established insurer's maximum liability under MCS–90 endorsement), *aff'd*, 178 F.3d 1283 (4th Cir.1999). Accordingly, Royal cannot claim to have incurred expenses above $1,000,000.00 *pursuant to* the MCS–90 endorsement. Reimbursement of amounts over $1,000,000.00 on the basis of the endorsement is unwarranted. Royal has not placed the court in a position to determine, and the court will not speculate regarding, whether Royal may recover the remaining amount it expended under another legal theory.

In light of the foregoing, the court holds that Santori must reimburse Royal the $1,000,000.00 Royal expended pursuant to the MCS–90 endorsement.

## IV. Conclusion

For the foregoing reasons, the court **GRANTS** Royal's motion for summary judgment (Docket No. 42) but limits the reimbursement amount to $1,000,000.00. The court **DENIES** Santori's motion for summary judgment (Docket No. 53).

The court **DECLARES** that Royal is entitled to reimbursement from Santori in the amount of $1,000,000.00 and **ORDERS** Santori to pay Royal that amount. Any interest, costs, or fees shall be requested by motion to the court. Judgment shall enter accordingly.

**SO ORDERED.**