## TRAVELERS INDEMNITY CO. OF ILLINOIS

v.

## WESTERN AMERICAN SPECIALIZED TRANSPORTATION CO., INC., et al

### No. CIV.A. 6:01–637.

United States District Court,
W.D. Louisiana,
Lafayette–Opelousas Division.

May 5, 2004.

William Shelby McKenzie, Austen M. Adams, Jennifer M. Sigler, Elisabeth Quinn Zelden, Taylor Porter et. al., Baton Rouge, LA, Thomas M. Crawford, Litchfield Cavo, Chicago, IL, for Travelers Indemnity Co. of Ill.

James M. Dill, Lafayette, LA, for Western Amer. Specialized Transp. Services, Inc., Nobel Ins. Co., Richard Wade Barnett.

Andre' F. Toce, Michael G. Daiy, Adras P. L. Endom, Toce & Daiy, Lafayette, LA, for Dixie Carriere, Chris Carriere.

## MEMORANDUM RULING

MELANCON, District Judge.

Before the Court is a Motion For Summary Judgment And/Or Motion To Dismiss filed by Nobel Insurance Company ("Nobel").[1] For the reasons that follow, Nobel's motion will be granted.

### Background

This action for declaratory judgment arises from an underlying state court action entitled *Dixie Carriere, et al. v. Western American Specialized Transportation Services, et al,* Civil Docket Number 98–1196 "A", filed in the Fifteenth Judicial District Court, Parish of Lafayette, State of Louisiana. The action arose out of an accident on March 12, 1997 when a truck owned and operated by Richard Wade Barnett collided with an automobile driven by Dixie Carriere. At the time of the

---

1. Based on the exhibits attached to Nobel's motion, the Court will consider Nobel's motion as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

accident, Barnett was in the course and scope of his employment with Western American Specialized Transportation Services, Inc. ("Western American") and Barnett's truck was leased by Western American. Western American and Barnett were covered by a primary insurance policy issued by Nobel in the amount of $1,000,000.00. Western American also carried an additional $4,000,000.00 in excess coverage from Travelers Indemnity Company of Illinois ("Travelers").

In October, 2000, at the conclusion of the state court trial, the jury awarded the Carrieres $2,674,540.00 in damages. Nobel deposited its policy limits plus legal interest due into the registry of the court and devolutively appealed the judgment. Travelers denied coverage and filed the instant declaratory judgment action seeking a declaration of its duties and responsibilities regarding coverage under the policy issued to Western American and its financial obligation under the MCS–90 Endorsement which was attached to the Travelers' policy. Travelers named Nobel, Barnett and the Carrieres as defendants. Thereafter, the Carrieres filed a cross claim against Nobel and a counter claim against Travelers seeking a declaration of

Travelers obligations under the policy and the MCS–90 Endorsement. On February 22, 2002, Travelers filed a cross claim against Nobel alleging that Nobel, as the primary insurer of Western American and Barnett, breached the duty to defend and settle all claims against its insureds with reasonable prudence and good faith.[2] *R. 30.* On Travelers' unopposed motion, the Court severed Travelers' cross claim against Nobel on October 8, 2002. *R. 59; 60.* In a Memorandum Ruling and Judgment dated November 27, 2002, the Court granted the Carriere's motion for summary judgment and denied Travelers' cross motion for summary judgment holding that Travelers was financially responsible to the Carrieres for the underlying state court judgment under its MCS–90 Endorsement to Western American. *R. 64; 65.* On June 10, 2003, while the November 27, 2002 Judgment was on appeal, Travelers settled with the Carrieres for $1.55 million and subsequently dismissed its appeal. Thus, Travelers' cross claim against Nobel is now properly before the Court as presented in the instant motion.

## Summary Judgment Standard

A motion for summary judgment shall be granted if the pleadings, depositions,

---

**2.** In particular, Travelers' cross claim alleges that Nobel breached the following duties:

"a. Failing to sufficiently investigate and reasonably evaluate the claims against the insureds;

b. Failing to settle the claims against its insureds within the policy limits when it had the opportunity to do so;

c. Failing to protect its insureds against judgments in excess of its policy limits by failing to seek full release of its insureds by settlement for an amount within its policy limits;

d. Failing to provide reasonably experienced counsel to defend claims of this magnitude against it insureds;

e. Failing to adequately monitor the defense and to recognize the seriousness of the claims against its insureds;

f. Failing to reasonably and adequately communicate with its insureds and cross-claimant to advise them of the nature and extent of the claims, of settlement negotiations, and of other matters relating to their exposure in this action; and

g. Other negligent acts and omissions unreasonably exposing its insureds to substantial judgment in excess of its policy limits."

and that such breach exposed Western American and Barnett to liability in excess of the Nobel policy. *Id.,* ¶ *9.* Travelers further alleged that as a result of the aforesaid breach, "Nobel is also liable for the portion of the judgment in excess of the policy limits and Nobel is liable to Travelers for reimbursement of any amount Travelers has had to pay by [the November 28, 2003] judgment." *Id.,* ¶ *10.*

and affidavits submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. PROC. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc). When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). As to issues which the nonmoving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the nonmoving party's claim. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548.

Once the movant produces such evidence, the burden shifts to the respondent to direct the attention of the court to evidence in the record sufficient to establish that there is a genuine issue of material fact requiring a trial. *Id.* The responding party may not rest on mere allegations made in the pleadings as a means of establishing a genuine issue worthy of trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Little*, 37 F.3d at 1075. If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. FED. R. CIV. PROC. 56(c); *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the nonmoving party. *Id.*

### Analysis

In its motion for summary judgment, Nobel moves the Court to dismiss Travelers' cross claim against it because: (1) Barnett settled its claims against Nobel on April 16, 2003, and therefore had no rights to which Travelers could be subrogated at the time of Travelers' settlement with the Carrieres on June 10, 2003; (2) Western American assigned its rights to Commercial Capital Holding Corporation on September 26, 2000, and therefore Travelers could not be subrogated to Western American's alleged claim against Nobel because all of Western American's rights had been assigned to a third party at the time Travelers made the payment to the Carrieres on June 10, 2003; (3) Subrogation does not occur when payments are made pursuant to the MCS–90 because "[a]n MCS–90 payment is more closely akin to a suretyship, [and thus] the payor [Travelers] steps into the shoes of the creditor [the Carrieres] rather than the debtor [Western American and Barnett]...", and the MCS–90 Endorsement expressly states that, "[t]he insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement." *R. 75.*

In opposition to Nobel's motion, Travelers denies Nobel's contentions that there can be no subrogation because any rights were either extinguished or assigned at the time Travelers would otherwise have assumed them. Travelers argues that, by its payment to the Carrieres on June 10, 2003, Travelers became legally subrogated to the rights of Western American and Barnett as to their alleged bad faith claims against their primary insurer, Nobel. Travelers further asserts that Nobel's contention that subrogation cannot take place under the circumstances in this case because any such action under the MCS–90 is governed by the laws of suretyship, is contrary to the Interstate Commerce Com-

mission's regulations as well as the surety-ship laws of Louisiana.

As the Court finds that under the MCS–90 Travelers can assert no right of subrogation on behalf of Western American or Barnett, it is not necessary to address whether or not those parties' alleged rights against Nobel were viable at the time of Travelers' settlement with the Carrieres.

*Travelers' Rights Under The MCS–90*

 Nobel maintains that Travelers could not become subrogated to any rights of Western American and Barnett related to this matter through the payment Travelers made to the Carrieres because Travelers did not pay the judgment under Western American's insurance policy. Rather, based on the Court's November 27, 2002 Memorandum Ruling, Travelers paid the judgment pursuant to its MCS–90 Endorsement attached to Western American's policy, and Travelers has only a right of reimbursement against Western American. Nobel argues that the jurisprudence provides that the MCS–90 is more closely akin to a suretyship, and pursuant to Louisiana Civil Code article 3048, "A surety who pays the principal obligation is subrogated, by operation of law to the rights of the creditor." Thus Nobel contends, Travelers, the payor of the principal obligation, steps into the shoes of the Carrieres, the creditor in this case, and is subrogated to the rights of the Carrieres rather than the rights of Western American and Barnett. Because a surety is allowed reimbursement for payment of an obligation from the principal obligor, or debtor, Nobel maintains that, as a surety, Travelers is entitled to reimbursement from Western American and Barnett.

Travelers asserts that Nobel's attempt "to equate suretyship laws to an MCS–90 Endorsement simply because the MCS–90 is 'closely akin' or is in the 'nature to a suretyship' is in error." Rather, Travelers argues, the ICC recognizes that the MCS–90 is distinct and different from a surety bond in that 49 U.S.C. § 31139(e) and 49 C.F.R. § 387.7(d)(1–3) allow a motor carrier to show financial responsibility through either an insurance policy, which is classified as Form MCS–90, or through a surety bond, which is classified as Form MCS–82.[3] "If the MCS–90 Endorsement was identical to a surety bond," Travelers contends, "the ICC would not have permitted a motor carrier the option of an MCS–90 Endorsement or a surety." Travelers further argues that under Louisiana Civil Code article 3035, "suretyship" is defined as "an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon failure of the latter to do so." Because it does not require Travelers to "fulfill the obligation of another [Western American] upon failure of the latter to do so", the MCS–90 Endorsement is not an "accessory contract" or a suretyship as defined under article 3035.

In *T.H.E. Ins. Co. v. Larsen Intermodal Services, Inc.*, 242 F.3d 667 (5th Cir.2001), the Fifth Circuit held that the MCS–90

---

**3.** 49 U.S.C. § 31139(e), Evidence of financial responsibility, provides that financial responsibility may be established by "insurance", "a guarantee", "a surety bond" or "qualification as a self-insurer."

49 C.F.R. § 387.7(d)(1–3) provides that proof of the required financial responsibility shall consist of either "(1) 'Endorsement(s) for Motor Carrier Policies of Insurance for Public Liability Under Sections 29 and 30 of the Motor Carrier Act of 1980' (Form MCS90) issued by an insurer(s); (2) A 'Motor Carrier Surety Bond for Public Liability Under Section 30 of the Motor Carrier Act of 1980' (Form MCS–82) issued by a surety; or (3) A written decision, order, or authorization of the Federal Motor Carrier Safety Administration authorizing a motor carrier to self-insure under § 387.309 . . . ."

Endorsement which required the motor carrier's liability insurer to pay a judgment against the insured but entitled the insurer to reimbursement if it paid for liability not covered by the policy, did not constitute insurance coverage per se, but rather imposed on the insurer an obligation analogous to that of a surety. The court stated,

> "We have also held that the policy embodied in the ICC regulations 'was to assure that injured members of the public would be able to obtain judgments collectible against negligent authorized carriers.' *Canal Ins. Co. v. First Gen. Ins. Co.,* 889 F.2d 604, 611 (5th Cir. 1989). Thus, the insurer's obligations under the MCS–90 are triggered when the policy to which it is attached provides no coverage to the insured. The First Circuit has aptly described the obligation placed upon the insurer by the MCS–90 as one of suretyship. '[W]e consider the ICC endorsement to be, in effect, suretyship by the insurance carrier to protect the public-a safety net . . . . [I]t simply covers the public when other coverage is lacking.' *Canal Ins. Co. v. Carolina Cas. Ins. Co.,* 59 F.3d 281, 283 (1st Cir.1995). *See also Boston Ins. Co. v. Nogg (In re Yale Express Sys., Inc.),* 362 F.2d 111, 113–14 (2nd Cir.1966) (interpreting a similar ICC endorsement for loss of cargo, and concluding that the insurer was a surety for the carrier for claims payable solely under the endorsement)."

*T.H.E.,* 242 F.3d at 672.

Accordingly, the Fifth Circuit, as well as other circuits, has determined that the coverage provided pursuant to an MCS–90 Endorsement takes the form of a suretyship, rather than providing insurance coverage per se. *Id.; See also, John Deere Ins. Co. v. Truckin' U.S.A.,* 122 F.3d 270 (5th Cir.1997)(The MCS–90 Endorsement creates a surety relationship, rather than an indemnity relationship, with respect to payments that the insurer would not have been obligated to make under the provisions of the policy, except for the agreement contained in the endorsement.); *Canal Ins. Co. v. Carolina Cas. Ins. Co.,* 59 F.3d 281, 283 (1st Cir.1995)("we consider the ICC endorsement to be, in effect, suretyship by the insurance carrier to protect the public—a safety net"); *Ford Motor Co. v. Transport Indem. Co.,* 795 F.2d 538, 546 (6th Cir.1986)(The insurer's obligation under an MCS–90 Endorsement is like that of a surety); *In re Yale Exp. System, Inc.,* 362 F.2d 111, 114 (2d Cir.1966)("[W]e consider the [Form MCS–90 type] endorsement to be . . . a suretyship by the insurance carrier to protect the public . . ., which requires the insurer to pay only final judgments assessed against the policyholder"). Further, the language of the MCS–90 Endorsement obligates the insured to reimburse the insurer for any payments the insurer would not have been liable to make under the policy but for the terms of the endorsement.[4] *T.H.E.,* 242

---

**4.** The MCS–90 states in pertinent part:

> "In consideration of the premium stated in the policy to which this endorsement is attached, the insurer agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor

vehicle is specifically described in the policy."

> \* \* \* \* \* \*

> However, all terms, conditions, and limitations in the policy to which endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to

F.3d at 670–71. An MCS–90 Endorsement does not obligate an insurer to either defend or indemnify its insured against a liability claim. Instead, the insurer must pay any judgment awarded against the policyholder subject to a right of reimbursement. *Canal Ins. Company v. First General Ins. Co.*, 889 F.2d 604, 611–12 (5th Cir.1989); *See also, American Inter–Fidelity Exchange v. American Re–Insurance Co.*, 17 F.3d 1018, 1021 (7th Cir.1994)(Under the express terms of the endorsement, once the insurer has settled its insured's obligation, it is entitled to reimbursement from its insured); *Harco Nat'l Ins. Co. v. Bobac Trucking, Inc.*, 107 F.3d 733, 736 (9th Cir.1997) (MCS–90 Endorsement does not require insurer to defend insured).

Travelers contends that it has the option of seeking reimbursement from its insureds, or pursuing its subrogation rights as an excess insurer against Nobel for the settlement amount it paid to the Carriers, and that it has chosen the option of subrogation. Travelers bases its right to pursue subrogation on its position that, as Western American and Barnett's excess insurance carrier, Travelers' payment to the Carriers allows it to seek recovery against the primary insurance carrier, Nobel, by asserting the rights of Western American and Barnett, to which Travelers is subrogated as their excess insurer. As determined by the Court in its November 27, 2002 Memorandum Ruling, however, the excess insurance policy issued by Travelers did not apply to the accident in question. Rather, Travelers was obligated under its MCS–90 Endorsement to pay the portion of the Carriere's judgment in excess of Nobel's coverage. *R. 34.* Thus, Travelers remedy against Western American and Barnett is only as the provider of

make under the provisions of the policy except for the agreement contained in this

an MCS–90 Endorsement, not as an excess insurer.

Nor is the Court impressed with Travelers' argument that Nobel cannot "equate the MCS–90 Endorsement to a surety bond" because the ICC offers a motor carrier the option of either an MCS–90 Endorsement or a surety bond. *R. 86, pp. 16–18.* The jurisprudence cited herein clearly instructs that as the provider of an MCS–90 Endorsement, Travelers "is akin to a surety" just as Travelers would be considered if it had provided a surety bond. Thus, in accordance with Fifth Circuit jurisprudence, under the MCS–90 Travelers' relationship to Western American and Barnett is that of a surety rather than an insurer and Travelers has a right of reimbursement from Western American and Barnett for the amount it paid to the Carrieres.

Travelers right to reimbursement from Western American and Barnett is confirmed under Louisiana's surety law, Louisiana Civil Code article 3049, which provides, "When a surety pays a creditor for a principal obligation that is due, the surety is entitled to reimbursement from the principal obligor." La.C.C. art. 3049. Louisiana law also provides that the surety who pays the principal obligation is subrogated by operation of law to the rights of the creditor. La.C.C. art. 3048. As stated in Travelers' opposition memorandum, "Travelers paid $1.55 million to the Carrieres on behalf of Western American and Barnett pursuant to the MCS–90." *R. 86,* Travelers Memo. in Oppo., p. 10. Based on Louisiana law, upon paying the obligation Travelers became subrogated to the rights of the Carrieres rather than becoming subrogated to the rights of Western American and Barnett as Travelers con-

endorsement."

tends. Accordingly, Nobel's motion for summary judgment in that regard will be granted.

## Conclusion

Travelers' sole remaining claim in this matter is based on its position that it is legally subrogated to the rights of Western American and Barnett as to their claims against Nobel for its alleged failure to properly defend and settle all claims against them with reasonable prudence and good faith. As there are no genuine issues of material fact that under the MCS–90 Endorsement Travelers is not entitled to become subrogated to the rights of Western American and Barnett, but rather is subrogated to the rights of the Carrieres and has only reimbursement rights against Western American and Barnett, Nobel's motion for summary judgment will be granted and Travelers' remaining claim against Nobel will be dismissed.

## JUDGMENT

In accordance with the Memorandum Ruling issued on this date,

Motion For Summary Judgment And/Or Motion To Dismiss filed by Nobel Insurance Company [Rec. Doc. 75], is GRANTED and Travelers Indemnity Company of Illinois' claims against Nobel Insurance Company are DISMISSED WITH PREJUDICE.