United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 10, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————————

No. 04-30536

———————————————

TRAVELERS INDEMNITY COMPANY OF ILLINOIS,

Plaintiff-Cross Claimant-Appellant,

versus

WESTERN AMERICAN SPECIALIZED TRANSPORTATION
SERVICES, INC., ET AL.,

Defendants,

NOBEL INSURANCE COMPANY,

Defendant-Cross Defendant-Appellee.

———————————————————————————————————

Appeal from the United States District Court for
the Western District of Louisiana

———————————————————————————————————

Before REAVLEY, JOLLY and PRADO, Circuit Judges.

REAVLEY, Circuit Judge:

This is an attempt by an excess insurance carrier to recover from a primary insurer.

The district court granted summary judgment in favor of the primary carrier, and we

affirm.

BACKGROUND

In 1997 Dixie Carriere was injured when her automobile and a truck owned and operated by Richard Barnett collided. Barnett was operating the truck in the course and scope of his employment with Western American Specialized Transportation Services, Inc. (Western). The accident occurred in Louisiana and Barnett and Carriere are Louisiana residents. Western is a Delaware corporation with its principal place of business in Louisiana.

Western had leased Barnett's truck and is a common carrier subject to certain regulations of the Department of Transportation, and was required to carry at least $5 million in insurance coverage.[1] Western and Barnett were insured by a $1 million primary policy with appellee Nobel Insurance Co. (Nobel). Western procured an excess policy of $4 million from appellant Travelers Indemnity Company of Illinois (Travelers). The Travelers policy included a federally mandated endorsement known as the MCS-90 endorsement.[2] The MCS-90 endorsement states:

> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation,

---

[1] See 49 C.F.R. § 387.9 (2004).

[2] See 49 U.S.C. §§ 13906(a)(1), 31139(b); 49 C.F.R. §§ 387.7, 387.15 (2004). So far as we can tell from the records and briefs, the primary policy did not include the MCS-90 endorsement, so the excess policy was not a strict "following form" excess policy that mirrored precisely the underlying primary policy. However, our analysis does not turn on whether Nobel's primary policy also contained the MCS-90 endorsement.

maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. . . .

It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. . . .  The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in the endorsement.

It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.

The last two sentences from the endorsement excerpt quoted above are unusual provisions for an insurance policy rider or endorsement, in that they (1) expressly grant the judgment creditor the right to seek direct payment from the insurer, and (2) entitle the insurer to seek reimbursement from the insured for any payment made under the endorsement.

Carriere and her husband and children (the Carrieres) brought a Louisiana state court action against Barnett, Western, and Nobel.[3]  After a jury trial the state court

___

[3]  Because Louisiana has a direct action statute, the Carrieres were allowed to name Nobel as a party defendant in their state court suit.  See LA. REV. STAT. ANN. § 22:655(B) (West 2004).

awarded a judgment of $2,674,540 to the Carrieres.  Nobel deposited its $1 million in policy limits plus interest into the registry of the court.

After the state court judgment, the Carrieres attempted to collect the remainder of their judgment from Travelers.  Travelers initiated the pending federal declaratory judgment action against the Carrieres, Barnett, Western, and Nobel.  Travelers sought a declaratory judgment that its excess policy did not cover any liability of the defendants in the state court action.

Travelers later sought and received leave to file a "cross-claim" against Nobel, after allegedly learning for the first time, upon review of a summary judgment memorandum filed by the Carrieres in the federal suit, that the Carrieres had offered to settle the state court action for $900,000, within the policy limits of the primary policy, and that Nobel had refused this settlement offer.  Travelers asserted in the cross-claim:

> If the Court finds that Travelers provides coverage or financial responsibility on behalf of Western American and Barnett, Travelers would be subrogated to the rights of its Insureds, Western American and Barnett, for claims that Nobel, as the primary insurer of Western American and Barnett, breached the duties to defend and settle all claims against its insureds with reasonable prudence and good faith.

The cross-claim then alleges that Nobel breached its duties to its insureds in several specific respects.  For our purposes, the claims are premised on the theory that Travelers is subrogated to the rights of the insureds and can sue for the alleged negligence of Nobel in breaching a duty to the insureds to defend prudently the state court suit and settle it within the policy limits.

4

By summary judgment the district court ruled that the MCS-90 endorsement in the Travelers policy applied to the state judgment in favor of the Carrieres.[4] The Carrieres argued below, the district court held, and the parties to this appeal do not dispute, that the MCS-90 endorsement was the only basis on which the excess policy covered the Carriere accident and resulting judgment.[5] After this interlocutory ruling Travelers settled with the Carrieres for $1.55 million. The court then ruled in a second summary judgment that Travelers had no claim against Nobel,[6] the subject of the pending appeal.

## DISCUSSION

The issue presented is whether the district court erred in ruling that Travelers, the excess carrier, had no claim against Nobel, the primary carrier, for Nobel's alleged negligent failure to settle the state court suit within the policy limits of the primary policy. The prevailing law, as accurately summarized by the district court, is that the

---

[4] Travelers Indem. Co. of Ill. v. W. Am. Specialized Transp. Serv., Inc., 235 F. Supp.2d 522 (W.D. La. 2002).

[5] Travelers urged below that under another endorsement in the excess policy, endorsement CG T8 00 09 96, its policy only applied when the insured was hauling oilfield equipment for certain named entities, or hauling anything for three other named entities, and that Western was not hauling for any named entity at the time of the collision with Carriere. However, this endorsement had no effect on the MCS-90 endorsement, because as quoted more fully above the latter states that "no condition, provision, stipulation, or limitation contained in the policy . . . or any other endorsement thereon . . . shall relieve [Travelers] from liability or from the payment of any final judgment, within the limits of liability herein described . . . ."

[6] Travelers Indem. Co. of Ill. v. W. Am. Specialized Transp. Co., 317 F. Supp.2d 693 (W.D. La. 2004).

5

MCS-90 endorsement imposed a suretyship obligation on Travelers to the Carrieres.[7]

"Suretyship is an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so."[8]

Whether the MCS-90 obligation is most accurately described as one of suretyship, "in effect" a suretyship, or "akin" to suretyship, the result is the same and Travelers became subrogated to the rights of the Carrieres as judgment creditors of the insured parties, with a right to reimbursement from the insureds. The peculiar nature of the MCS-90 endorsement, granting the judgment creditor the right to demand payment directly from the insurer, and simultaneously granting the insurer the right to demand reimbursement from the insured, is inconsistent with allowing the insurer to stand in the shoes of the insured under a subrogation theory, and in effect sue on behalf of the insured for injury to the insured. The MCS-90 endorsement is "in effect, suretyship by the insurance carrier to protect the public—a safety net,"[9] and not an ordinary insurance provision to protect the insured. The endorsement does not extinguish the debt of the

---

[7] See id. at 698, where the court discussed T.H.E. Ins. Co. v. Larsen Intermodal Servs., Inc., 242 F.3d 667, 672 (5th Cir. 2001) (noting that "[t]he First Circuit has aptly described the obligation placed upon the insurer by the MCS-90 as one of suretyship") and other circuit court decisions.

[8] LA. CIV. CODE ANN. art. 3035 (West 2005).

[9] T.H.E. Ins. Co., 242 F.3d at 672 (quoting Canal Co. v. Carolina Cas. Ins. Co., 59 F.3d 281, 283 (1st Cir. 1995)).

insured; it transfers the right to receive the insured's debt obligation from the judgment creditor to the insurer.

Because Travelers became subrogated to the rights of the Carrieres as creditors and not to the rights of the debtors insured under the Nobel and Travelers primary and excess policies, Travelers cannot pursue a claim against Nobel under a theory that Nobel breached a duty to the insureds. Travelers has no direct state law claim against Nobel under a theory that the primary insurer owed a duty to the excess insurer. "[T]he primary insurer does not owe a duty of care or even of good faith performance to the excess insurer of its insured."[10] Absent a viable theory of liability based on subrogation, Travelers cannot prevail against Nobel. "[I]f the excess insurer is to recover from the primary insurer for acts which make the excess insurer's contract and liability more burdensome, it must do so by asserting the insured's rights after becoming subrogated to them or after acquiring them through assignment."[11]

AFFIRMED.

---

[10] Great Southwest Fire Ins. Co. v. CNA Ins. Cos., 557 So.2d 966, 971 (La. 1990).

[11] Id.